751 A.2d 473

**Fransharon JACKSON**

v.

**STATE of Maryland.**

**No. 105, Sept. Term, 1999.**

Court of Appeals of Maryland.

May 10, 2000.

Daniel H. Weiss, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

The issue before us is whether the Circuit Court for Baltimore County erred in denying petitioner's motion for new trial, based on newly discovered evidence. Petitioner's complaint is not that the motion should have been granted, but that it should not have been denied without a hearing. At our request, she and the State have also addressed the question of whether the court was authorized to act on the motion while her appeal from the judgment of conviction was pending in the Court of Special Appeals. We find merit in the issue she raised, but none in the issue we raised. Petitioner was entitled to a hearing, and we shall direct that the case be remanded so that she can have one.

## BACKGROUND

After a non-jury trial, petitioner was convicted of first degree felony murder, robbery with a deadly weapon, and several lesser included offenses, for which she was sentenced to life imprisonment. The victim was 73–year old Claude Bowlin, whom the 24–year old petitioner claimed as a friend. Bowlin, a widower who lived alone, frequently gave petitioner money to support her cocaine addiction. Petitioner visited Mr. Bowlin on a weekly basis, to get money for drugs and to perform sexual favors for him. Petitioner was also involved in a romantic relationship with Corey Williams, a co-defendant tried separately. At trial, the State offered substantial evidence to show that, on the evening of August 17, 1997, pursuant to a common scheme between petitioner and Williams to steal from Bowlin, petitioner went to Bowlin's home, that she and Bowlin retired to Bowlin's bedroom where they undressed and engaged in sexual acts, that while Bowlin was so distracted, Williams entered the house, came up to the bedroom, and repeatedly bashed Bowlin in the head with a ceramic beer stein, that either Williams or petitioner gagged Bowlin with a shirt sleeve, that Williams then stole a VCR and a CD player, that petitioner and Williams left together, that petitioner sold the items taken by Williams, and that petitioner and Williams used the proceeds to buy more drugs.

Bowlin died from a combination of the blunt blows and cuts to the head and asphyxia, the latter caused by the gag stuffed into his mouth and across his face. At trial, petitioner essentially conceded that she agreed to distract Bowlin so that Williams could enter the house undetected and steal items therefrom, but she maintained that she had no intent to harm Bowlin. She claimed that she was surprised when Williams appeared in the bedroom and began beating Bowlin. She denied being the one who gagged Bowlin, though she admitted that she got a towel and put it over Bowlin's face in order to stop the bleeding or clean up the blood.[1] In arguing for

---

[1]. Not surprisingly, Williams, in his trial, told a somewhat different story. In his statement to the police, he said that it was Jackson who

acquittal, she asserted that (1) there was no evidence that she killed Bowlin, (2) she acted under duress from Williams, (3) the murder was essentially a frolic of Williams and not in furtherance of anything she planned, (4) there was no evidence of a robbery, and (5) to the extent the State relied upon a burglary as the underlying felony, there was insufficient evidence of a breaking.[2] The court rejected all of those arguments and found that Williams, in consort with petitioner, did commit a burglary by opening a closed door to enter the house for the purpose of stealing, that there was also a robbery with a deadly weapon, and that there was no duress.

Petitioner promptly filed a motion for new trial, raising all of the arguments made at trial and, relying on the recently filed opinion of the Court of Special Appeals in *Stouffer v. State*, 118 Md.App. 590, 703 A.2d 861 (1997), *aff'd in part, rev'd in part*, 352 Md. 97, 721 A.2d 207 (1998), claimed that the murder was not really in furtherance of the alleged burglary but was a crime of passion committed entirely by Williams. The court delayed consideration of that motion, and, concomitantly, of sentencing petitioner until the completion of Williams's trial, which occurred in May, 1998.[3] At a hearing conducted on July 16, 1998, at which the State reminded the court of evidence showing that Mr. Bowlin's drawers had been

---

told him that Bowlin had some valuable electronic equipment and suggested stealing it. He said that, after he sneaked into the house, Jackson met him in the kitchen, advised that she had been unable to find the cash that she believed Bowlin had in the house, and suggested that Williams knock Bowlin out so they would be able to search for the money and take other valuables. It was thus at her suggestion that he took a mug from the kitchen and struck Bowlin with it. *See Williams v. State*, 127 Md.App. 208, 218, 732 A.2d 376, 381 (1999).

2. Although petitioner was not charged with burglary, the State urged that Williams did perpetrate one by opening the closed screen door to the house and that a conviction for felony murder could be based on the murder arising from the uncharged burglary.

3. Williams also was convicted of felony murder, robbery with a deadly weapon, and theft and sentenced to life imprisonment. In July, 1999, his convictions were affirmed by the Court of Special Appeals. *See Williams v. State, supra*, 127 Md.App. 208, 732 A.2d 376.

ransacked and items in the room moved around, indicating a search for money and thus an intended theft, the court rejected all of petitioner's arguments. In the course of doing so, it noted that Mr. Bowlin died not just from the blows administered by Williams but also from asphyxiation, and, although it had made no finding on the matter when announcing its verdict, declared that "[s]he's the one that stuck the gag in his mouth because she didn't want the noise." The court concluded that "this is as clearly a murder committed in the furtherance of a felony as I think you can possibly have."

Immediately following the denial of the motion, the court imposed sentence, and, the next day, petitioner noted an appeal to the Court of Special Appeals. In that appeal she complained that (1) the trial court refused to admit certain letters sent to petitioner by Williams in which Williams allegedly characterized himself as a "jealous boyfriend that acted in a fit of rage," letters which would presumably support her notion that Williams committed the killing out of jealousy, rather than in furtherance of a burglary or robbery, and (2) under *Stouffer*, the evidence was insufficient to "show a direct, causal connection between the murder and the taking of Bowlin's property."

On November 10, 1998, while both her appeal and that of Williams were pending in the Court of Special Appeals, petitioner filed another motion for new trial, based on newly discovered evidence. The newly discovered evidence was a handwritten note from Williams, dated September 23, 1998, admitting that he gagged Bowlin, that petitioner "had nothing to do with the gagging of Mr. Claude Bowlin," and that he was "willing to take the stand and [admit] my guilt." That statement, she averred, constituted newly discovered evidence because it was not in existence prior to September, 1998. She asked, as relief, that the court order a new trial, that it resentence petitioner, and that it schedule the matter "for an immediate hearing." The State, in response, characterized the "admission" made by Williams after his own conviction and sentencing as merely "an attempt at gallantry" not sufficient

to constitute newly discovered evidence that would have a substantial likelihood of changing the outcome of the trial.

Despite petitioner's request for a hearing, the court, on December 14, 1998, denied the motion without a hearing. In a brief order, it said that it had considered the motion and the State's answer and reviewed its notes of the trial and disposition, and, declaring "no hearing being required," denied the motion. Petitioner filed an appeal from that ruling, raising in the Court of Special Appeals the single complaint that the trial court erred in denying the motion without a hearing.

On April 14, 1999, the Court of Special Appeals acted in the first appeal. In an unreported opinion, it affirmed the judgments of conviction, finding no merit in either of the two issues raised by petitioner in that appeal. As to the claimed evidentiary insufficiency, the court held that the evidence "was more than sufficient to sustain the trial court's decision" and that "[a]ny rational trier of fact could have found appellant guilty of felony murder beyond a reasonable doubt." *Jackson v. State,* No. 1056, September Term, 1998, filed April 14, 1999, at 6.

On July 23, 1999, the intermediate appellate court decided the second appeal and affirmed the order denying petitioner's motion for new trial. *Jackson v. State,* No. 1919, September, Term 1998, filed July 23, 1999. In its unreported opinion, the court agreed that the issue of whether petitioner was entitled to a hearing was governed by Maryland Rule 4–331(e). Rule 4–331(a) permits a motion for new trial to be made within 10 days after entry of a verdict. As noted, petitioner made such a motion, which was denied. Rule 4–331(c), in relevant part, permits a circuit court to grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered in time to move for new trial under Rule 4–331(a), if the motion is filed within one year after the later of imposition of sentence or receipt of the mandate from the Court of Special Appeals or this Court, if an appeal has been taken from the judgment. Rule 4–331(e) states, in relevant part, that, unless the motion is filed more

than one year after the circuit court receives the mandate from this Court, which was not the case here, "[t]he court shall afford the defendant or counsel and the State's Attorney an opportunity for a hearing on a motion filed under this Rule."

The Court of Special Appeals, somewhat contradictorily, we think, held, on the one hand, that "[i]ndisputably, pursuant to the plain language of Rule 4–331(e), the trial court must afford the parties an opportunity for a hearing on the motion prior to ruling on the merits of the motion," but, on the other, that "[a]ffording the parties an opportunity for a hearing on a motion for new trial would be warranted upon a showing that the purported newly discovered evidence was not already known to appellant and that it could not have been discovered upon the exercise of due diligence." *Jackson v. State*, No. 1919, September Term, 1998, filed July 23, 1999, at 5, 6. Though seemingly rejecting the State's argument that Rule 4–331(e) should not be strictly construed, the court concluded, on it own, that there was nothing new in the second motion that could not have been raised in the first motion and, for that reason, found no error in the trial court's denial of the motion without a hearing.

## *DISCUSSION*

### Timing of the Ruling on the Motion

■  Petitioner's first complaint is that the trial court was not authorized to act on her motion for new trial while her appeal from the judgments of conviction was pending in the Court of Special Appeals. This is an issue that was not raised in the circuit court, in the Court of Special Appeals, or in petitioner's petition for *certiorari*. As we indicated, we added it on our own initiative in the order granting *certiorari*, and it is therefore addressed by the parties at our invitation.

■  Petitioner acknowledges that the issue added by us is not a jurisdictional one—that the circuit court did have jurisdiction to act on the motion. That is a proper concession. In and since *Pulley v. State*, 287 Md. 406, 412 A.2d 1244

(1980), we have made clear that a circuit court is not divested of fundamental jurisdiction to take post-judgment action in a case merely because an appeal is pending from the judgment. What the court may *not* do is to *exercise* that jurisdiction in a manner that affects either the subject matter of the appeal or the appellate proceeding itself—that, in effect, precludes or hampers the appellate court from acting on the matter before it. *See In re Emileigh F.,* 355 Md. 198, 733 A.2d 1103 (1999); *State v. Peterson,* 315 Md. 73, 553 A.2d 672 (1989). Any post-judgment ruling by a circuit court that has that effect may be subject to reversal on appeal, but it is not void *ab initio* for lack of jurisdiction to enter it.

Responding to the issue we raised, petitioner argues that (1) in her appeal, she claimed that the evidence was legally insufficient to show that the murder was committed in further-ance of a felony; (2) if she prevailed on that claim, the murder conviction would have to be reversed and, under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), she could not have been retried on that charge; (3) if the trial court, in the meanwhile, had granted her motion for new trial, she would have been retried; (4) a granting of her motion would have rendered moot her appeal by eliminating the final judgment necessary for appellate jurisdiction, thereby depriv-ing her of her right to an absolute reversal of the judgment without retrial; and (5) although *denial* of the motion would clearly not have that effect, if the trial court could not properly grant the motion, it should not be able to deny it either.

In the Federal system, this issue is dealt with directly by rule. Rule 33 of the Federal Rules of Criminal Procedure specifies that, when a motion for new trial based on newly discovered evidence is filed while an appeal is pending from the judgment of conviction, the court may grant the motion only on remand of the case from the appellate court. The Federal courts have interpreted the rule as permitting the court to deny the motion, notwithstanding the pendency of the appeal, but not to grant the motion absent a remand. *See United States v. Blanton,* 697 F.2d 146 (6th Cir.1983); *United*

*States v. Coleman,* 688 F.2d 663 (9th Cir.1982); *United States v. Burns,* 668 F.2d 855 (5th Cir.1982); *United States v. Pullings,* 321 F.2d 287 (7th Cir.1963), *overruled on other grounds by United States v. White,* 405 F.2d 838 (7th Cir. 1969).

The comparable Maryland Rule is not so specific. We need not consider in this appeal whether an order *granting* the motion for new trial would have been subject to reversal on the ground noted. That would, indeed, have presented some interesting issues, not the least of which would be whether petitioner could complain that, at her express urging, the trial court may have frustrated her appeal. *See State v. Peterson, supra,* 315 Md. 73, 553 A.2d 672. Here, of course, because the motion was *denied,* there was no adverse impact at any time on the jurisdiction of the Court of Special Appeals or on its ability to resolve the issue then before it; denial of the motion eliminated any possible conflict with the appeal. We reject as unsound the assertion that, if the court was not authorized to *grant* the motion, it was equally unauthorized to *deny* it. That is tantamount to the extraordinary contention that, whenever a court is presented with a motion or other issue requiring a decision, it is unauthorized to make any ruling on the matter unless all possible rulings would be authorized. No authority is cited for such a proposition, and we know of none that would support it. Accordingly, we find no error in the court's having denied the motion for new trial while petitioner's appeal was pending.

### Ruling without a Hearing

As is the case with the first issue, the Maryland Rule differs, in its wording, from the comparable Federal Rule. Federal Rule of Criminal Procedure 33 says nothing about whether a U.S. District Court must hold a hearing on a motion for new trial, and the Federal courts have interpreted that silence as indicating that the court has discretion in the matter. *See United States v. Wright,* 625 F.2d 1017 (1st Cir.1980); *United States v. DiPaolo,* 835 F.2d 46 (2d Cir. 1987); *United States v. Herman,* 614 F.2d 369 (3d Cir.1980);

*United States v. Molovinsky,* 688 F.2d 243 (4th Cir.), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983); *United States v. Chagra,* 735 F.2d 870 (5th Cir.1984); *United States v. O'Dell,* 805 F.2d 637 (6th Cir.), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1658, 90 L.Ed.2d 201 (1986); *United States v. Hedman,* 655 F.2d 813 (7th Cir.1981); *United States v. Bednar,* 776 F.2d 236 (8th Cir.1985); *United States v. Nace,* 561 F.2d 763 (9th Cir.1977); *United States v. Bradshaw,* 787 F.2d 1385 (10th Cir.1986); *United States v. Slocum,* 708 F.2d 587 (11th Cir.1983). *See also Story v. State,* 788 P.2d 617 (Wyo.), *cert. denied,* 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 76 (1990); *Clark v. State,* 530 N.E.2d 1182 (Ind.1988).

We have noted above the requirements of Maryland Rule 4–331. Section (e) of that rule is clear and direct. Unlike the Federal rule, and with the one inapplicable exception stated, it requires that "[t]he court shall afford the defendant or counsel and the State's Attorney an opportunity for a hearing on a motion filed under this Rule." In her motion, petitioner expressly requested a hearing, so no issue of waiver is presented.

It is not entirely clear to us whether, in affirming the trial court's ruling, the Court of Special Appeals interpreted Rule 4–331(e) as conditioning the right to a hearing on a preliminary determination by the court that the evidence posited by the defendant is, in fact, newly discovered, or whether it recognized the right to a hearing on that issue as well but simply concluded that the denial in this case was harmless, or non-prejudicial. Whichever theory it used, we think it erred. The rule requires the opportunity for a hearing "on a motion filed under this Rule." The motion, of course, asserts both that the evidence was newly discovered and that it might well have produced a different result. We can find no basis for a conclusion that the required hearing is only to consider the second allegation and that the court may avoid a hearing by determining, preliminarily and without a hearing, that the evidence was not newly discovered. The only basis for the court to deny a hearing is expressly provided for in the rule—

a determination that the motion was filed late and did not comply with the requirements of § (d) of the Rule.

■■ The alternative prospect—that, without so characterizing it by name, the Court of Special Appeals effectively applied a harmless error approach to the undisputed violation of the rule in this case—is equally unsupportable. Whether the denial of a hearing in contravention of Rule 4–331(e) can *ever* be harmless error—an issue we need not resolve in this appeal—it is clear that the violation that occurred in this case was not harmless.

■■■ In *Noble v. State*, 293 Md. 549, 559, 446 A.2d 844, 848 (1982), we recognized that the rules of criminal procedure "are not exempt from the harmless error principle." We reaffirmed, however, our adherence to the more general principle that the rules of practice and procedure adopted by this Court are to be strictly followed and that "[a] violation of one of these rules constitutes error, normally requiring such curative action or sanction as may be appropriate." *Id.* at 557, 446 A.2d at 848. In essence, that simply paraphrases the provision in Maryland Rule 1–201(a):

> "When a rule, by the word 'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute. If no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule."

There are many rules dealing with hearings on motions of one kind or another, and they seem to fall into three categories. In some instances, the rule focuses on the particular action that may be taken but conditions the taking of that action on first affording the parties an "opportunity for hearing" or an "opportunity to be heard." [4] Other rules are not

---

4. *See, for example,* Maryland Rule 4–216(i) (allowing amendment to pretrial release order after notice and opportunity for hearing); Rule 4–245(e) (directing that court determine whether defendant is subsequent

phrased in sequential or conditional language but expressly require a hearing, not just the opportunity for one.[5] In yet other cases, we have made clear that neither a hearing nor an opportunity for one is required and have left it to the discretion of the court whether to conduct a hearing.[6]

Rule 4–331(e) combines features of all three categories. The general requirement—the one relevant here—is that the court "shall afford the defendant or counsel and the State's Attorney an opportunity for a hearing on a motion filed under this Rule." That requirement is not cast in sequential or conditional language, as are most of the other rules that speak only of an "opportunity" for a hearing, but, by requiring only the opportunity for a hearing and not absolutely mandating one, the rule also more clearly allows for a waiver of a hearing. Under either approach, however, in the absence of a waiver by both sides, the court must conduct a hearing before acting on the motion.

---

offender "after giving the defendant an opportunity to be heard"); Rule 4–346(b) (allowing court to modify probation order "after giving the defendant an opportunity to be heard"); Rule 4–349(d) (allowing court to amend order of release following conviction after notice and opportunity for hearing).

**5.** *See, for example,* Rule 4–347(e) dealing with revocation of probation (court *"shall hold a hearing to determine whether a violation has occurred and, if so, whether the probation should be revoked"*); Rule 4–242(g) dealing with withdrawal of guilty plea (court "shall hold a hearing on any timely motion to withdraw a plea of guilty or nolo contendere"); Rule 4–507(a) (hearing "shall be held" on application for expungement); Rule 4–406(a) (hearing "shall be held" on petition under Post Conviction Procedure Act unless parties stipulate to facts and applicable law); Rules 4–216(g) and 4–222(a) dealing with pretrial release hearings; Rule 2–311(f) (hearing required on certain dispositive civil motions if hearing was required).

**6.** *See* Rule 2–311(f) (hearing not required on non-dispositive civil motions); Rule 4–241(c) (hearing not required on exceptions to response to bill of particulars); Rule 4–252(h)(2)(A) (court "may hold a hearing" on motion to reconsider pretrial order suppressing evidence); Rule 4–406(a) (on request to reopen post conviction proceeding, court "shall determine whether a hearing will be held" but may not reopen or grant relief without a hearing unless parties stipulate to facts and applicable law).

Even when afforded only by rule, and not as an incident of due process of law, the right to a hearing is of fundamental importance. It represents an assessment by us of the significance of the matter under consideration, at least to the parties, and, given that significance, of their right, if they choose to exercise it, to present directly to the court, *viva voce,* the reasons why they should prevail. It is a recognition that personal, vocal communication with the judge may not only itself be a more effective means of persuasion than written documents that may be read hurriedly and not fully appreciated or understood, but that a hearing offers at least a limited opportunity for dialogue, allowing for clarification, for greater precision, for addressing concerns harbored and expressed by the judge. It is a right that, ordinarily, may be waived, but when not waived, we are loathe, in the absence of extraordinary circumstances, to find its denial harmless. It would often be a matter of pure speculation whether prejudice ensued—whether, had the party been given the opportunity to make his or her "pitch" at a hearing, the result may have been different—and that is much more likely the case when the decision may rest upon the resolution of factual disputes or the exercise of discretion and judgment.

That is the situation here. This was a non-jury trial. The judge decided the relevant facts. In denying petitioner's first motion for new trial, he found that petitioner personally gagged the victim and thus contributed directly to the victim's death. Although that was certainly a permissible finding by inference, there was no affirmative evidence to that effect; petitioner denied gagging the victim. She said that she put a towel over his head, but, according to the medical examiner, the gag, which he removed from the victim, was a sleeve that had been jammed into the victim's mouth in such a way as to cause the tongue to lift and block the air passage. Petitioner did not have the benefit of Williams's September, 1998 statement when her first motion for new trial was made and decided.

■ In order to prevail on her motion, petitioner had the burden to demonstrate that (1) the statement from Williams was in fact, newly discovered evidence—evidence that could not have been discovered by due diligence in time to have presented it in connection with her first motion for new trial, and (2) that the newly discovered evidence "may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the trier of fact would have been affected." *Yorke v. State*, 315 Md. 578, 588, 556 A.2d 230, 235 (1989). The first prong is essentially a factual one, and, although the Court of Special Appeals appeared to make its own factual determination that there was "nothing 'new' in the second motion for new trial that could not have been raised in the first motion," the record by no means compels such a finding. There is no compelling evidence that testimony from Williams that he, not petitioner, gagged the victim was, or in the exercise of due diligence could have been, available to petitioner prior to July, 1998, when her first motion was decided. Although Williams had by then been convicted, his appeal was still pending in the Court of Special Appeals, and, although he ultimately chose to make this admission before his appeal was resolved, it was not the kind of admission he could reasonably be expected to make while his appeal was still pending.

The second prong is a judgmental one—weighing the effect of the evidence. Petitioner contended throughout that she had no part in the killing of Mr. Bowlin—that the homicide was committed entirely by Williams for reasons of his own and not in furtherance of the scheme to rob Bowlin. *See Watkins v. State*, 357 Md. 258, 744 A.2d 1 (2000); *Mumford v. State*, 19 Md.App. 640, 313 A.2d 563 (1974). In rejecting that contention when denying petitioner's first motion for new trial, the judge expressed a finding that petitioner had been the one to gag the victim and, in so doing, personally contributed to his death. Williams's later statement that he inserted the gag, if credited, could possibly have led the judge to reconsider petitioner's contention. Obviously, the judge was not required to credit that statement, but whether he should credit it, and,

if he did, whether that evidence "may well have produced a different result" were matters upon which oral argument may have been helpful to petitioner. However strong the case was against petitioner—and it was a strong case—this was not a situation in which, on undisputed facts and inferences, denial of the motion was legally mandated.

On this record, we cannot safely declare that the State has met its burden of establishing that petitioner was not prejudiced by the lack of a hearing—that denial of a hearing was harmless beyond a reasonable doubt. The appropriate remedy in such a situation is to vacate the order and remand the case for a hearing. *See EMI Excavation v. Citizens Bank,* 91 Md.App. 340, 604 A.2d 518, *cert. denied,* 327 Md. 523, 610 A.2d 796 (1992); *United States v. Mitchell,* 602 F.2d 636 (4th Cir.1979); *United States v. Disston,* 582 F.2d 1108 (7th Cir. 1978).

JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE ORDER DENYING MO-TION FOR NEW TRIAL AND REMAND CASE TO CIR-CUIT COURT FOR BALTIMORE COUNTY FOR HEAR-ING ON THE MOTION; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY BALTI-MORE COUNTY.