*Travis Harding v. State of Maryland*
Case No. 2472 September Term, 2014

**HEADNOTE**

**CRIMINAL PROCEDURE – GUILTY PLEAS – APPLICATIONS FOR LEAVE TO APPEAL – ISSUES THAT MAY BE ARGUED ON APPEAL.** Although Maryland Rule 8-204(b)(3) requires that an application for leave to appeal "shall contain a concise statement of the reasons why the judgment should be reversed or modified and shall specify the errors allegedly committed by the lower court," nothing in Rule 8-204 states that, if an application is granted, only the points specified in the application may be argued on appeal. Because Rule 8-204(g)(1) states that, if the Court of Special Appeals grants an application and orders further proceedings in that Court, those proceedings "shall be conducted . . . as if the order granting leave to appeal were a notice of appeal filed pursuant to Rule 8-202," the applicant is not restricted to the errors alleged in the application.

**CRIMINAL PROCEDURE – GUILTY PLEAS – WITHDRAWAL OF PLEA – RIGHT TO HEARING.** Maryland Rule 4-242(h) provides that a defendant may file a motion to withdraw a guilty plea upon certain grounds within ten days after sentencing. The rule further mandates: "The court shall hold a hearing on any timely motion to withdraw a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere."

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2472

September Term, 2014

_____

TRAVIS HARDING

v.

STATE OF MARYLAND

_____

Meredith,
Leahy,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Meredith, J.

_____

Filed: December 21, 2017

Travis Harding, appellant, was charged with two counts of second-degree assault. On the date set for trial in the Circuit Court for Baltimore County, Harding entered an *Alford* plea to one count of second-degree assault.[1] He was sentenced to incarceration for a term of five years, with all but time served suspended. Within ten days after sentencing, Harding filed a motion to withdraw his guilty plea and motion for new trial, both of which were summarily denied without a hearing. Thereafter, Harding filed an application for leave to appeal. We granted leave to appeal, and transferred the case to the regular docket.

## QUESTIONS PRESENTED

Harding presents the following three questions for our consideration:

I. Did the trial court err in accepting Harding's plea of guilty to second-degree assault where the record shows that neither the court, the prosecutor, nor defense counsel explained on the record the elements of second-degree assault and neither Harding nor defense counsel represented that Harding had been informed by counsel of the elements of second-degree assault?

II. Did the trial court err in denying Harding's motion to withdraw the guilty plea and motion for new trial?

III. Did the trial court err in failing either to order a competency evaluation or conduct an inquiry of Harding to determine whether he was competent to plead guilty before accepting his guilty plea?

---

[1] An "*Alford* plea," which derives its name from *North Carolina v. Alford*, 400 U.S. 25 (1970), "is 'a guilty plea containing a protestation of innocence.' *Marshall v. State*, 346 Md. 186, 189 n. 2, 695 A.2d 184, 185 n. 2 (1997), citing *Pennington v. State*, 308 Md. 727, 728 n. 1, 521 A.2d 1216, 1216 n. 1 (1987)." *Silver v. State*, 420 Md. 415, 424 n.4 (2011).

Because the circuit court erred by ruling on Harding's motion to withdraw his guilty plea without granting him the hearing that is required by Maryland Rule 4-242(h), we shall remand this case for further proceedings.

## FACTUAL BACKGROUND

On the morning the case was scheduled for trial, counsel for Harding told the trial judge that Harding was refusing to speak to him. The trial judge informed Harding that he had been "charged with two counts of second-degree assault under Maryland law," and asked, among other things, if he was unhappy with his counsel or wished to proceed to trial with counsel. Harding's initial response was: "I want a postponement. . . . I like it in jail. . . . I do good in jail. . . . I do good with the people I'm with right now."

But Harding subsequently confirmed that he did not wish to fire defense counsel, and he agreed to speak to defense counsel regarding the State's offer to resolve both second-degree assault charges by "recommending a disposition of some sentence suspending all but time served," which would result in Harding's prompt release from the county detention center.

After a recess to allow for that discussion, the parties returned to the courtroom and advised the judge that Harding wished to enter "a plea of guilt [sic] by way of an *Alford* plea[.]" The prosecutor explained that, upon a finding that Harding was guilty of the second-degree assault of his wife, the State would nol pros the remaining count of second-degree assault. The State asked for "a split sentence, generally suspending all but time served," but also the entry of an order that Harding have no contact with the victim, and that the file be marked as domestically related.

2

During a brief discussion at the bench with counsel, at which Harding was not present, the trial judge asked defense counsel: "Is he okay?" Counsel replied: "I think so. I think he's competent." But the prosecutor then noted that he had observed some unusual conduct on Harding's part during a hearing on a protective order: "[Harding] said something like, 'If I can't see my kids, I just want to die.' . . . They said they had him on suicide watch."

Thereafter, the trial judge questioned Harding in open court, and confirmed that he was 40 years old, had some college education, and had served in the military. The judge reviewed the nature of an *Alford* plea, which the judge described as not admitting guilt but conceding that "there's sufficient evidence if believed that can be adduced by the State that would permit somebody to find me guilty." The judge described a jury trial and the requirement of a unanimous verdict. And the court confirmed that no one had made any threats or promises to induce Harding to agree to enter a plea. The court then stated:

> THE COURT: All right. I'm gonna find based on my review of the form that was filled out and initialed by Mr. Harding and signed by him with his counsel, couple[d] with my colloquy with him that his waivers are free, knowing, voluntary and intelligent. May I hear the statement of facts, please?

> In support of the plea, the prosecutor presented the following statement of facts:

> [PROSECUTOR]: [On] April 14, 2014, Baltimore County Police responded to [a residence in] Baltimore County. The Defendant, Travis Harding, who is the Defendant here, was attempting [to] file a missing person's report [regarding] his wife, [Ms. T.], and their three children. The officer was able to contact Ms. T[.] at this time[;] she was not a missing person. The Defendant didn't know where she was.

3

Officer Flynn spoke with her, Your Honor. She indicated that she's afraid of him, that he had made threats against her. He drinks heavily and has substance abuse which makes it very difficult, indicating that he becomes violent when he becomes intoxicated.

She indicated that on April 12, 2014, she had taken her dog for a walk, heard the Defendant yelling obscenities at their [child], heard Defendant yelling at [their child], he hated him and couldn't stand him. [That child] was frightened and hid in the closet with [another child] . . . .

[Ms. T.] advised shortly thereafter the Defendant threw a large plastic popcorn container at their [child], striking [the child] in the face and knocking [the child off a] chair. She left the location with the children[,] fearing for their safety after that incident. There were no signs of physical injury on the child.

[Ms. T.] advised, your Honor, March 24th – she indicates to me that it's actually March 25th. It states in the police report March 24th – but that when she came home from work at 10:30 in the morning, he, the Defendant, accused her of infidelity and not being at work. She went in the bathroom to take a shower, he followed her in there. He pushed her into the bathroom wall, pressed his forearm into her throat, strangling her.

She advised that he said to her, "Do you think this is a game?" He applied more pressure to her throat saying, "Look at me, don't look away. You think I'm joking? I can kill you and will kill you." She said she complied to look at him and he eased the pressure that he had placed on her throat at that time. [Ms. T.] said the Defendant said he would kill her if she ever left with the kids, and that he would find her and take the kids. She said during the strangulation her vision began to fade, she could not breathe and believed if she did not submit to his demand she was going to be killed and her children's lives in danger.

Your Honor, all events did occur in Baltimore County. If called to testify, witnesses would identify this Defendant as the individual who did commit the second-degree assault of his wife, [Ms. T.], and that would be the statement in support of the plea.

[DEFENSE COUNSEL]: Your Honor, the only addition would be that there was no 911 call or other report made after this strangling incident.

4

[PROSECUTOR]: That is correct, your Honor. The victim who's here, Ms. T[.], advi[s]es that that was not reported prior to the incident with their [child].

THE COURT: [Th]ere's a factual basis for the plea, and I find the Defendant guilty of second-degree assault.

The court imposed a sentence of five years, all suspended but time already served, with three years' probation, the first year supervised. The court also imposed conditions limiting contact with Ms. T.

Within ten days after Harding was sentenced, counsel for Harding filed a motion to withdraw his guilty plea, combined with a motion for new trial. The motion asserted, *inter alia*, that, as soon as Harding had been released from custody on the day of the plea, he was admitted to Sheppard Pratt Hospital. Counsel asserted in the motion that he now had "grave doubts regarding [Harding's] competence to waive his trial rights and enter into a plea agreement." The motion asked the court to hold a hearing on the matter after Harding was released from Sheppard Pratt. Three days later, the court stamped the motion "Considered and DENIED," without any hearing. An application for leave to file this appeal followed. We granted the application and transferred the case to our regular appeal docket.

## DISCUSSION

### I.

Harding contends that his guilty plea to one count of second-degree assault must be vacated for three reasons. First, he argues, there is nothing in the record that confirms that he was advised of the elements of second-degree assault or what the State would

5

have to prove to establish that offense before he entered the plea, as required by *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Second, Harding's conduct in court at the plea hearing (such as telling the court that he liked being in jail) should have triggered further evaluation of his mental competency on that date. And third, the court was required by Rule 4-242(h) to conduct a hearing on his motion to withdraw his plea, but the court failed to do so.

As a preliminary matter, the State asserts that the first and third contentions—regarding the lack of advice regarding the elements of second-degree assault, and the court's failure to conduct a hearing on Harding's motion to withdraw the plea—are not properly before us because, in Harding's application for leave to appeal, those arguments were not expressly articulated as points he proposed to argue if we granted his application. The State urges us to rule that Harding's application for leave to appeal asserted only that he had not been competent to enter into the plea agreement and waive his right to a jury trial. As a result, the State contends, he is confined to arguing only that claim and may not now make the additional arguments that he was not advised of the elements of second-degree assault and that he was entitled to a hearing on his motion to withdraw his plea. We do not agree that Harding is precluded from raising these issues.

Although Maryland Rule 8-204(b)(3) requires that an application for leave to appeal "shall contain a concise statement of the reasons why the judgment should be reversed or modified and shall specify the errors allegedly committed by the lower court," nothing in Rule 8-204 states that, if an application is granted, only the points specified in the application may be argued on appeal. Rule 8-204(f)(5) provides that one

6

of the options this Court may exercise for disposition of an application for leave to appeal is to "grant the application and order further proceedings in the Court of Special Appeals in accordance with section (g) of this Rule." That is the option we chose for disposition of Harding's application. We ordered that "the case is hereby transferred to the regular appeal docket of this Court."

Rule 8-204(g)(1) prescribes the manner in which we will handle a case in which we grant an application for leave to appeal pursuant to Rule 8-204(f)(5): "Further proceedings directed under subsection (f)(5) of this Rule shall be conducted pursuant to this Title and *as if the order granting leave to appeal were a notice of appeal filed pursuant to Rule 8-202*." (Emphasis added.) *See State v. Thomas*, 325 Md. 160, 175-76 (1992) (stating: "Md. Rule 8-204(g) provides that if an application for leave to appeal is granted, further proceedings 'shall be conducted pursuant to this Title and as if the order granting leave to appeal were a notice of appeal filed pursuant to Rule 8-202.'").

Notices of appeal filed pursuant to Rule 8-202 are not required to specify the points an appellant expects to argue on appeal, and, even if an appellant does set forth in a notice of appeal proposed points the appellant wishes to argue, we treat that language as surplusage and non-limiting. In *Edery v. Edery*, 213 Md. App. 369, 377 n.7 (2013), Judge Deborah Eyler observed for this Court: "A notice of appeal, whether filed in the circuit court or the orphans' court, does not need to specify the orders appealed from, and operates as an appeal of any order that is appealable at that time." *Accord Green v. Brooks*, 125 Md. App. 349, 363 (1999) ("It is clear that the language in appellant's notice of appeal does not determine what we may review."); *see also Grandison v. State*, 425

Md. 34, 52 (2012) ("We view the decision as to whether an appellate court will require strict compliance with the terms of Rules 8-204 or 8-306 to be discretionary."). In *Walker v. State*, 161 Md. App. 253, 278 (2005), *aff'd on other grounds*, 391 Md. 233 (2006), we said that one of Walker's arguments had not been preserved for our review because it had not been raised either in the circuit court or in his application for leave to appeal, citing Rule 8-204(b)(2). But we nevertheless exercised our discretion to review the argument without addressing the impact of Rule 8-204(g). *Id*.

Rule 8-204(f)(5) does not prohibit this Court from placing conditions or substantive limitations on our grant of an application for leave to appeal, but our order granting Harding's application did not specify any limitations on the issues he could argue in his appeal. Consequently, we conclude that Harding is not precluded from arguing that the circuit court erred by failing to ensure that he was entering the plea "with understanding of the nature of the charge," and by failing to hold a hearing on his motion to withdraw his *Alford* plea.

## II.

As noted above, Harding contends, *inter alia*, that the trial court erred in denying his motion to withdraw his guilty plea without holding a hearing. Seven days after Harding was sentenced, defense counsel filed a single document captioned "MOTION TO WITHDRAW GUILTY PLEA AND MOTION FOR NEW TRIAL." In that motion, Harding's counsel (who had represented him at the time of the plea and sentencing) questioned his competence to waive a trial and enter the *Alford* plea. Harding's counsel prayed that the court permit him to withdraw his guilty plea, grant him a new trial in the

8

interest of justice, and grant a hearing on the motion.  The court denied Harding's motion without a hearing.

Motions to withdraw guilty pleas are governed by Maryland Rule 4-242(h), which states:

> (h) **Withdrawal of Plea**.  At any time before sentencing, the court may permit a defendant to withdraw a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere when the withdrawal serves the interest of justice.  **After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty**, a conditional plea of guilty, or a plea of nolo contendere if the defendant establishes that the provisions of section (c) or (e) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4-243.  **The court shall hold a hearing on any timely motion to withdraw a plea of guilty**, a conditional plea of guilty, or a plea of nolo contendere.

(Emphasis added.)

Harding maintains that he was entitled to withdraw his plea because the requirements of Rule 4-242(c) were not satisfied.  At the time of Harding's plea, Rule 4-242(c) required that, before a court could accept a plea of guilty, the court was required to determine that "the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea."  Harding contends that the trial court could not have properly determined that he was pleading voluntarily and with the requisite understanding of the consequences of the plea because the court did not confirm on the record that he understood the elements of second-degree assault, and he was experiencing mental health problems on the day he entered the plea.

As a variation of its preservation argument, the State asserts that Harding's post-trial motion did not sufficiently apprise the trial court that he was seeking to withdraw his

9

guilty plea. Additionally, relying on *Dawson v. State*, 172 Md. App. 633 (2007), the State contends that the issue of whether the trial court erred in denying Harding's motion to withdraw his guilty plea is not properly before us because Harding failed to file a separate notice of appeal (that is, a separate notice in addition to the application for leave to appeal that we granted).

As we noted above, Rule 8-204(g) provides that, if we grant an application and transfer the case to our regular docket, that order is treated like a notice of appeal filed pursuant to Rule 8-202. When an appellant files a timely notice of appeal, Rule 8-202 does not require the appellant to provide, at the time the notice is filed, an immutable list of issues to be argued on appeal. Consequently, we conclude that Harding's argument about the circuit court's error in failing to hold the hearing required by Rule 4-242(h) is properly before us.

The State concedes in its brief that, if this issue is properly before us, the circuit court erred. The State acknowledges: "[I]f the post-trial pleading filed by Harding was sufficient to constitute a proper motion for withdrawal of plea, the trial court, by rule, was required to hold a hearing on Harding's timely filed motion to withdraw his guilty plea." The State agrees that, if we reach this issue, a remand is required. The State's brief concedes: "Therefore, if this issue is properly before this Court and this Court determines that Harding's motion was sufficient to invoke the requirements of Rule 4-242(h), then this case should be remanded for a hearing on Harding's motion to withdraw his plea."

10

It is clear to us that Harding's motion that was filed within ten days after the imposition of his sentence was "sufficient" to trigger the trial court's consideration of his request to withdraw his plea. Indeed, the motion was captioned "MOTION TO WITHDRAW GUILTY PLEA AND MOTION FOR NEW TRIAL." The first sentence of the motion stated that Harding, through his attorney, "moves to withdraw his guilty plea . . . ." In the body of the motion, defense counsel asserted: "I have grave doubts regarding the Defendant's competence to waive his trial rights and enter into a plea agreement." And, among the prayers for relief was a request to "Withdraw his Guilty Plea."

Because Harding properly raised in his post-trial motion a question regarding his competence to waive his trial rights and enter a guilty plea, it is clear that Rule 4-242(h) required the lower court to hold a hearing on Harding's timely-filed motion to withdraw his guilty plea. In *Jackson v. State*, 358 Md. 612, 624 n.5 (2000), the Court of Appeals identified the predecessor of Rule 4-242(h)—then "Rule 4-242(g) dealing with withdrawal of guilty plea"—as an example of mandatory rules that "expressly require a hearing, not just the opportunity for one." The *Jackson* Court emphasized that "the right to a hearing is of fundamental importance," and, "when not waived, we are loathe, in the absence of extraordinary circumstances, to find its denial harmless." *Id.* at 625; *accord Douglas v. State*, 423 Md. 156, 181 (2011).

We agree with the State's concession that a remand is appropriate for the trial court to conduct the hearing mandated by Rule 4-242(h). Accordingly, we will remand

11

this case for a hearing on Harding's timely motion to withdraw his guilty plea, and we

will not address the other questions he raised because they may well become moot.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY DENYING APPELLANT'S MOTION TO WITHDRAW GUILTY PLEA AND MOTION FOR NEW TRIAL VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY BALTIMORE COUNTY.**