790 A.2d 629

**Wesley Eugene BAKER**

v.

**STATE of Maryland.**

**No. 40, Sept. Term, 2001.**

Court of Appeals of Maryland.

Feb. 7, 2002.

Reconsideration Denied March 6, 2002.

650

Franklin W. Draper, Assistant Federal Public Defender and Gary W. Christopher, Chief Assistant Federal Public Defender (William B. Purpura, Assigned Public Defender, on brief), Baltimore, for appellant.

Ann N. Bosse, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

**652**

CATHELL, Judge.

On June 6, 1991, Jane Tyson took two of her grandchildren, four year old Carly and six year old Adam, shopping for sneakers at the Westview Mall in Baltimore County. After completing their shopping, Mrs. Tyson and her grandchildren left the mall and entered the parking lot where Mrs. Tyson had parked her red Buick. When they arrived at the car, Carly sat in the rear seat and, as Adam was preparing to enter the front passenger seat and Mrs. Tyson was preparing to enter the driver's seat, a man ran up to Mrs. Tyson and shot her in the head. Adam heard his grandmother scream and he saw the man shoot her. Adam then saw the man run to a blue truck and enter on the left side.[1] Mrs. Tyson died at the scene from the gunshot wound.

On the evening of June 6, 1991, at approximately 8:30 p.m., Scott Faust was traveling behind the Westview Mall on the way to visit his father who lived directly behind the mall. As Mr. Faust was driving, he noticed a blue Chevrolet Blazer

---

1. Adam did not testify at trial but a stipulation between the State and Wesley Baker was agreed upon. The stipulation was read into the record. It stated:

"It is hereby stipulated and agreed by and between the State of Maryland and Wesley Eugene Baker, the Defendant on trial under Case Number 92–C–0088, that if Adam Michael Sulewski, age seven, were called to the stand, he would testify that on June 6, 1991 he was six years old and the grandson of Mrs. Tyson, the victim in this offense. Adam would state that he was present with his grandmother when she was shot and that he, along with his grandmother and his four year old sister, Carly, were shopping at the Westview Mall. Adam would state that when they arrived at their grandmother's car, his sister got into the rear seat. He was standing on the passenger side, preparing to enter the right front passenger seat and his grandmother was getting in the vehicle through the driver's door when he observed a 'black man' run up to his grandmother. The next thing he remembered was hearing his grandmother screaming 'NO'. Adam would state, 'He shot her. I saw blood coming out of her mouth'. Adam would continue to state that after the shooting, he saw who he thinks were 'two good guys' chasing after the man who did the shooting. He would state that the 'black man' ran to his truck, which he described as being blue in color with black windows. He would further state that once the subject entered his truck on the left side, he 'took off' as fast as he could. The only other description Adam would give about the black male would be that he had short hair."

truck and a red Buick parked side by side in the mall parking lot. Mr. Faust watched as two men jumped into the Blazer and sped away. Mr. Faust then noticed that a person was lying on the ground next to the open driver's side door of the Buick. Mr. Faust drove closer to the Buick at which time he saw that the person laying on the ground was a woman and that she was bloody. He watched as a little girl ran around the front of the Buick from the passenger's side and screamed, "Mom Mom's shot." Mr. Faust saw a woman run over and take care of the children, therefore, Mr. Faust decided to pursue the Blazer.

Mr. Faust caught up to the Blazer after several blocks and as he was sitting behind the Blazer at a stop light, he wrote down the license plate number of the Blazer on a tissue box. Mr. Faust then headed back to the crime scene at which time he gave the police the tissue box with the license plate number on it.

The information provided by Mr. Faust was relayed to the Baltimore County Police Department. Two officers of the Baltimore County Police Department then saw the Blazer pass them at which time the officers pursued the vehicle. When the Blazer's path was blocked, the two passengers of the Blazer fled on foot. The officers immediately apprehended Gregory Lawrence, the driver of the Blazer, who gave them the description of the passenger in the Blazer. A Baltimore County Police Officer then apprehended Wesley Baker nearby. When Baker was apprehended, the police officer observed blood on Baker's right leg, including his pant leg, sock, and shoe. After a visual inspection, no blood was seen on Lawrence's clothing. Baker was identified as the passenger in the Blazer by the police officer who saw him flee the Blazer and by Mr. Faust, who had witnessed him riding in the passenger seat of the Blazer.

Mrs. Tyson's MOST card was found on the floor of the passenger's side of the Blazer. The handgun that shot and killed Mrs. Tyson was found between the front seats of the Blazer. Mrs. Tyson's purse and wallet were found on the

same path as that used by Baker when he fled. Baker's palm print and fingerprints were found on the exterior of the Blazer's passenger side and Baker's fingerprints were found on the driver's side door and window of the victim's Buick.

Baker was charged by indictment that was filed in the Circuit Court for Baltimore County on June 24, 1991. The indictment, in compliance with Maryland Code (1957, 1987 Repl.Vol.), Article 27 section 616,[2],[3] stated, in relevant part:

"STATE OF MARYLAND, BALTIMORE COUNTY,· TO WIT:

The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that WESLEY EUGENE BAKER AND ·GREGORY LAWRENCE late of Baltimore County aforesaid, on the 6th day of June, in the year of our Lord nineteen hundred and ninety-one at Baltimore County, aforesaid, feloniously, willfully and of deliberately premeditated malice aforethought did kill and murder one Jane Frances Tyson; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

Baker and Lawrence were also charged in the indictment with robbery with a dangerous and deadly weapon, two handgun violations, and possession of a revolver by persons convicted of a crime of violence.

On August 8, 1991, in compliance with Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Article 27 section 412(b),[4] the

---

**2.** We cite to the 1987 replacement volume with the 1991 cumulative supplement because that was the volume in effect at the time of the murder.

**3.** Maryland Code (1957, 1987 Repl.Vol.), Article 27 section 616 stated:

" § 616. Indictment for murder or manslaughter.

In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: 'That A.B., on the ..... day of ..... nineteen hundred and ....., at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State'. "

State notified Baker of its intention to seek the death penalty and of the aggravating circumstance upon which the State intended to rely. The notice sent to Baker stated:

## "NOTICE OF INTENTION TO SEEK SENTENCE OF DEATH

Now comes the State of Maryland by and through Sandra A. O'Connor, State's Attorney for Baltimore County, and S. Ann Brobst, Assistant State's Attorney for Baltimore County, and says:

Pursuant to Maryland Annotated Code, Article 27, Section 412(b)(1), the State of Maryland is hereby notifying you the Defendant in the above Indictment which charges you with the Murder of Jane Frances Tyson, Robbery with a Dangerous and Deadly Weapon of Jane Frances Tyson and other lesser offenses under Indictment Number 91CR2536, of its intention to seek the sentence of death.

Pursuant to Maryland Annotated Code, Article 27, Section 412(b)(1), the State of Maryland also notifies you that it intends to rely on the following Aggravating Circumstance under Maryland Annotated Code, Article 27, Section 413(d)(10).[5]

---

**4.** Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Article 27 section 412(b) stated:

" **§ 412. Punishment for murder.**

. . .

(b) *Penalty for first degree murder.*—Except as provided under subsection (f) of this section, a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole. The sentence shall be imprisonment for life unless: (1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely, and (ii) a sentence of death is imposed in accordance with § 413; or (2) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of imprisonment for life without the possibility of parole under § 412 or § 413 of this article."

**5.** Maryland Code (1957, 1987 Repl.Vol.), Article 27 section 413(d)(10) states:

1. The Defendant committed the Murder of Jane Frances Tyson in the First Degree while committing or attempting to commit a robbery of Jane Frances Tyson on June 6, 1991, as charged in Indictment Number 91CR2536."

On his motion, pursuant to Maryland Rule 4–254,[6] Baker's trial was moved from Baltimore County to Harford County. On October 26, 1992, after a jury trial in the Circuit Court for Harford County, Baker was found guilty of the first degree murder of Mrs. Tyson, the robbery of Mrs. Tyson with a deadly weapon, and the use of a handgun in the commission of a felony. Based on a request by Baker, the jury considered whether Baker was a principal in the first degree and found that he was.

On October 27, 1992, the sentencing hearing commenced, at which time Baker had to make a determination as to whether he wanted to be sentenced by the Circuit Court or by a jury. The following exchange occurred prior to the sentencing hearing.

---

"§ 413. **Sentencing procedure upon finding of guilty of first degree murder.**

. . .

(d) *Consideration of aggravating circumstances.*—In determining the sentence, the court or jury, as the case may be, shall first consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist:

. . .

(10) The defendant committed the murder while committing or attempting to commit a robbery, arson, rape or sexual offense in the first degree."

6. Maryland Rule 4–254 states, in relevant part, that:

"**Rule 4–254. Reassignment and removal.**

. . .

(b) **Removal in circuit courts.** (1) Capital cases. When a defendant is charged with an offense for which the maximum penalty is death and either party files a suggestion under oath that the party cannot have a fair and impartial trial in the court in which the action is pending, the court shall order that the action be transferred for trial to another court having jurisdiction. A suggestion by a defendant shall be under the defendant's personal oath. A suggestion filed by the State shall be under the oath of the State's Attorney."

"THE COURT: Okay. We would propose at this point to advise Mr. Baker of his right to be sentenced by either a Court or a jury, and get that election made. Defendant ready to proceed on that point?

MR. GALVIN: [7] We are, Your Honor.

THE COURT: Had adequate time to review this question with the Defendant?

MR. GALVIN: I believe we have.

THE COURT: Mr. Baker, do you feel you have had adequate time to review with counsel the issue of the election of either Court or jury to impose the sentence?

THE DEFENDANT: Yes.

THE COURT: We have now concluded the guilt phase of the trial, and you have been convicted, Mr. Baker, of Murder in the First Degree both as to Premeditated Murder and as to Felony Murder.

In addition, the jury has found beyond a reasonable doubt and to a moral certainty that you were a principal in the first degree. That is, that you committed the murder with your own hands.

That second part normally can be left to the sentencing phase. Here it was your request that that be included as a part of the guilt/innocence phase. The State did not object to that. So we submitted that question to the jury, that a jury has made that determination, and that is now a binding determination. So, that issue is behind us.

The next phase of the trial is the actual sentencing phase. It will be decided whether the sentence to be imposed on the Murder conviction should be death, life without parole, or life imprisonment.

Your trial was conducted above before a jury. You are not obligated to maintain that same election for sentencing. However, because you were tried by a jury, if you elect to be sentenced by a jury, you will be sentenced by the same

---

**7.** Roger W. Galvin and Rodney C. Warren were the attorneys representing Baker.

jury to consider guilt or innocence. So, if you have a jury, the same twelve people will be that unless we have had to excuse one, in which case one of the alternates would be used.

A jury is comprised of twelve citizens selected from the voter rolls of this jurisdiction. You and your attorneys have participated in the voir dire process where the potential jurors were examined and we selected the twelve jurors and the alternates.

If any juror held a belief or any potential juror held a belief either for or against capital punishment, which would prevent or substantially impair that juror from being impartial, that juror has not been allowed to serve as a juror in this case.

In order to secure a death sentence, it is the obligation of the State to prove beyond a reasonable doubt that you were a principal in the first degree to the murder. So, that's been submitted and that's been determined, and that determination is binding at this point.

The State also has the burden of proof beyond a reasonable doubt that the aggravated circumstances listed in the Notice of Intent to Seek a Death Penalty exist. The same burden of proof standard will prove beyond a reasonable doubt exists regardless of whether you elect to be sentenced by the Court or by a jury.

If you elect to be sentenced by a jury, each of these threshold determinations must be unanimous, and I am telling you that you have had the unanimous determination and that you were a principal in the first degree.

So, the next determination is whether or not the aggravated circumstances exist and that must be unanimous, and it must be beyond a reasonable doubt. If the sentencer, whether it be the court or jury, finds the State has satisfied its burden, the sentencer will go on to consider whether any mitigating circumstances exist.

Mitigating circumstances are any circumstances relating either to yourself or this trial that would tend to make the sentence of death less appropriate.

The statute lists seven circumstances that are considered to be mitigating. To be considered, there must be proof of the existence of any of these circumstances by preponderance of the evidence. This burden exists whether the sentencer is the Court or the jury.

In addition to the seven listed mitigating circumstances, the sentencer may write down any other fact or circumstance it finds to be mitigating. That is, anything about you or the crime that would make death less appropriate. Again, mitigating circumstances must exist by a preponderance of the evidence.

Further, it is necessary to convince the sentencer that both the fact and the circumstance exists, and that it is mitigating. As with the listed mitigating circumstances, this is the same whether the sentencer is the Court or jury.

Unlike the matters on which the State bears the burden of proof, if you elect to be sentenced by a jury, the jury need not be unanimous with respect to whether a particular mitigating circumstance exists. This is true as to both the statutory or the mitigating circumstances, and the non-statutory mitigating circumstances. That's the non-statutory, whether or not, is mitigating in the mind of the jury.

If, after a period of deliberation, the sentencing jury cannot unanimously agree on the existence of a particular mitigating circumstance, those jurors finding the mitigating circumstance will be instructed to consider it in determining the appropriate sentence. Those jurors finding that the mitigating circumstances do not exist will not consider it.

Only if the jury unanimously finds that no mitigating circumstance exists, the sentence of death [can] be entered without a balancing process. If at least one juror finds at least one mitigating circumstance, a balancing process will result.

Similarly, if the Court is the sentencer, a sentence of death will be imposed without a balancing process only if no mitigating circumstance is found. So, as long as at least one mitigating circumstance is found, a balancing process will result.

If the Court, sitting as the sentencer, finds both that an aggravating circumstance has been proven and that a mitigating circumstance exists, the Court will balance the mitigating circumstance or circumstances found to exist against the aggravating circumstance or circumstances proven beyond a reasonable doubt to determine whether the sentence would be death or not death.

The same balancing process is undertaken by a jury sitting as the sentencer where the jury unanimously concludes that an aggravating circumstance has been proven, and at least one juror concludes that a mitigating circumstance exists.

Whether the sentencer is the Court or a jury, the State bears the ultimate burden to establish the propriety of a death sentence.

If the sentencer, whether Court or jury, concludes that the mitigating circumstances outweigh the aggravating circumstances, the sentence shall not be death.

If the mitigating circumstances and the aggravating circumstances are in even balance, the sentence shall not be death. Only if the aggravating circumstances outweigh the mitigating circumstances is a sentence of death to be imposed. Where the sentencer is the jury, the outcome of the balance must be a unanimous conclusion of the jury. That is, all twelve must agree.

The need for jury unanimity has been noted on several occasions. If, after a reason[able] period of deliberation, the jury is unable to reach agreement unanimously on any matter for which unanimity is required, including whether a sentence of death should be imposed, a sentence of death shall not be imposed.

If the sentencer determines that the sentence shall not be death, then the same sentencer shall proceed to determine whether the sentence should be life or life without parole.

If the sentencer is a jury and they are unable to reach a verdict on the issue of death within a reasonable time, the same jury shall, nevertheless, proceed to consider the question of life or life without parole.

If the sentencer is a jury, a sentence of life without parole must be a unanimous decision. If the jury cannot achieve unaniminity on the issue of life without possibility of parole after a reasonable period of deliberation, a sentence of life must be imposed.

If you choose the Court as the sentencer, then I must consider whether life or life without parole is appropriate, if I determine that death is not the proper sentence.

First, did I cover adequately—did I make any mistakes in reading it?

MISS BROBST: [8] The State is satisfied, Your Honor. Thank you very much.

THE COURT: Mr. Galvin, Mr. Warren, do you feel I have adequately covered the instructions?

MR. GALVIN: We do, Your Honor.

THE COURT: Mr. Baker, do you have any questions concerning what I have said to you here?

THE DEFENDANT: No.

THE COURT: Have you had an opportunity to discuss this election with your attorneys?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had sufficient opportunity?

THE DEFENDANT: Yes.

---

8. The State of Maryland was represented by Sandra A. O'Connor, the State's Attorney for Baltimore County, and S. Ann Brobst, an Assistant State's Attorney for Baltimore County.

THE COURT: Are there any questions that you have of them that they have been either unwilling or unable to answer?

THE DEFENDANT: No.

THE COURT: What is your age?

THE DEFENDANT: 34.

THE COURT: How far did you go in school?

THE DEFENDANT: G.E.D.

THE COURT: How many years did you actually attend?

THE DEFENDANT: To the seventh.

THE COURT: And G.E.D. after that?

THE DEFENDANT: Uh huh.

THE COURT: Prior to coming here today, have you had any medication, or drugs, or alcohol that would affect your ability to understand my instructions, hear my questions, and answer my questions?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you prepared to make an election to whether you wish to proceed with the sentencing by Court or jury?

THE DEFENDANT: Yes, I have.

THE COURT: What is your election?

THE DEFENDANT: Sentenced by the Court.

THE COURT: Sentenced by the Court?

THE DEFENDANT: Yes.

THE COURT: You understand the jury will be discharged and have no further participation in the matter?

THE DEFENDANT: Yes.

THE COURT: Do you feel you have had adequate time on this? Are you satisfied to make this election now since it is final? Once you make it, and that jury is discharged, you can't change your mind. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you wish to have further time to discuss this in any way with your attorneys?

THE DEFENDANT: No, sir.

THE COURT: Then I will accept the election for the sentencing process to be with the Court. We will discharge the jury."

On October 30, 1992, after the sentencing hearing, the Circuit Court sentenced Baker to death for his conviction for murder. The Circuit Court also sentenced Baker to twenty years incarceration for robbery with a deadly weapon and to a consecutive twenty years incarceration for the use of a handgun in the commission of a felony. On January 28, 1993, Baker filed a Motion for Reconsideration of Sentence which was denied by the Circuit Court.

After receiving his death sentence, Baker filed an appeal. The appeal and an automatic review of his sentence by this Court in accordance with Maryland Code (1957, 1987 Repl. Vol.), Article 27 section 414, were consolidated. Baker's sentence and his conviction were affirmed by this Court. *Baker v. State*, 332 Md. 542, 632 A.2d 783 (1993).

On December 23, 1994, Baker filed a Petition for Post Conviction Relief in the Circuit Court for Harford County. In his petition, Baker alleged that he had: (1) been denied his constitutional right to a fair and impartial jury as the voir dire process resulted in a prosecution-prone jury; (2) he was denied his constitutional right to a trial by a jury selected from a fair cross-section of the community by the discriminating selection of the petit jury; and (3) he was denied the effective assistance of trial counsel in violation of the sixth, eighth, and fourteenth amendments of the United States Constitution and the Maryland Declaration of Rights. After a hearing was held on July 6 and July 7, 1995, the Circuit Court for Harford County issued a Memorandum Opinion that denied Baker's Petition for Post Conviction Relief.

On October 21, 1996, Baker, pursuant to Maryland Code (1957, 1996 Repl.Vol.), Article 27 section 645A(a)(2)(iii),[9] filed a

---

9. Maryland Code (1957, 1996 Repl.Vol.), Article 27 section 645A(a)(2)(iii) states that "[t]he court may in its discretion reopen a

Motion to Reopen the Post Conviction Proceeding. This motion was denied by the Circuit Court for Harford County on December 19, 1996.

Baker then filed a Petition for Writ of Habeas Corpus in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 2254. This petition was denied and the United States Court of Appeals for the Fourth Circuit affirmed the District Court's decision.

On March 9, 2001, Baker filed a Motion for New Sentencing in the Circuit Court for Harford County based on newly discovered evidence. On March 22, 2001, Baker filed a Motion to Correct Illegal Sentence and/or for New Sentencing Based Upon Mistake and Irregularity in the Circuit Court for Harford County. Both motions were denied by the Circuit Court on April 2, 2001. Baker filed a Notice of Appeal to this Court after the judgments of the Circuit Court.

Baker has presented six questions for our review.

1. Whether Mr. Baker made an unknowing and unintelligent waiver of his right to sentencing by jury when the trial court improperly advised him of what he was waiving?

2. Whether Maryland's death penalty statute is now unconstitutional on its face because it allows a sentence of death to be imposed if the State proves only that the aggravating circumstances outweigh any mitigating circumstances by a preponderance of the evidence?

3. Whether the court was without jurisdiction to impose a sentence of death because the indictment failed to allege all of the elements of capital murder?

4. Whether the rights identified by the Supreme Court's Decision in *Apprendi* apply to Mr. Baker?

5. Whether, as a matter of fundamental fairness, and pursuant to Article 24 of the Maryland Declaration of

---

postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice."

Rights, this Court should now hold that no sentence of death in Maryland is permissible unless the finder of fact unanimously finds beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances?

6. Whether the Circuit Court erred and abused its discretion in denying the motion for new sentencing based on newly discovered evidence?

## Discussion

We are going to first examine the Maryland capital sentencing scheme. We will then address questions two, four, and five, all of which are concerned with the United States Supreme Court case of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We will then individually address questions one, three,[10] and six.

## The Death Penalty

Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 section 412(b) states that "a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole." [11] The sentence for first degree murder is impris-

---

**10.** While Baker cites *Apprendi* in support of question three, as we state *infra, Apprendi* is not applicable. *See* footnote 23, *infra*.

**11.** Murder in the first degree is defined in Maryland Code (1957, 1996 Repl.Vol.), Article 27 sections 407–409 and in Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 section 410. Those sections state:

" § **407. First degree murder—Generally.**

All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree.

§ **408. Same—Murder committed in perpetration of arson.**

All murder which shall be committed in the perpetration of, or attempt to perpetrate, arson in the first degree shall be murder in the first degree.

§ **409. Same—Murder committed in burning barn, tobacco house, etc.**

onment for life unless "(1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance [12] upon which it intended to rely, and (ii) a

> All murder which shall be committed in the burning or attempting to burn any barn, tobacco house, stable, warehouse or other outhouse, not parcel of any dwelling house, having therein any tobacco, hay, grain, horses, cattle, goods, wares or merchandise, shall be murder in the first degree.
> **§ 410. Same—Murder committed in perpetration of rape, sodomy, mayhem, robbery, burglary, kidnapping, storehouse breaking, daytime housebreaking or escape.**
> All murder which shall be committed in the perpetration of, or attempt to perpetrate, any rape in any degree, sexual offense in the first or second degree, sodomy, mayhem, robbery under § 486 or § 487 of this article, carjacking or armed carjacking, burglary in the first, second, or third degree, a violation of § 139C of this article concerning destructive devices, kidnapping as defined in §§ 337 and 338 of this article, or in the escape in the first degree or attempt to escape in the first degree from the Patuxent Institution, any institution or facility under the jurisdiction of the Division of Correction or the Division of Pretrial Detention and Services, or from any jail or penal institution in any of the counties of this State, shall be murder in the first degree."

**12.** The aggravating factors that must be proven beyond a reasonable doubt to make a defendant eligible for a sentence of death are listed in Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 section 413(d), which states:

"(d) *Consideration of aggravating circumstances.*—In determining the sentence, the court or jury, as the case may be, shall first consider whether, beyond a reasonable doubt, any of the following aggravating circumstances exist:

(1) One or more persons committed the murder of a law enforcement officer while in the performance of his duties;

(2) The defendant committed the murder at a time when he was confined in any correctional institution;

(3) The defendant committed the murder in furtherance of an escape or an attempt to escape from or evade the lawful custody, arrest, or detention of or by an officer or guard of a correctional institution or by a law enforcement officer;

(4) The victim was taken or attempted to be taken in the course of a kidnaping or abduction or an attempt to kidnap or abduct;

(5) The victim was a child abducted in violation of § 2 of this article;

(6) The defendant committed the murder pursuant to an agreement or contract for remuneration or the promise of remuneration to commit the murder;

(7) The defendant engaged or employed another person to commit the murder and the murder was committed pursuant to an agreement or contract for remuneration or the promise of remuneration;

sentence of death is imposed in accordance with § 413; or (2) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of imprisonment for life without the possibility of parole under § 412 or § 413 of this article." Md.Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.) Art. 27 § 412(b).

If a person is found guilty of first degree murder and the State has given the required notice seeking a sentence of death, then the court moves on to a separate sentencing proceeding under Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 section 413.[13] Under section 413(b), the sentencing proceeding can be conducted before the jury that determined the defendant's guilt, before a jury impaneled for the sentencing proceeding, or before the court. Section 413(d) states that the court or jury, in the case *sub judice* the court, shall first consider whether any aggravating factors that make the defendant death penalty eligible have been proven by the State beyond a reasonable doubt. If no aggravating factors are found to have been proven beyond a reasonable doubt then a sentence of death cannot be imposed. If aggravating factors are found, the court or jury must then decide whether any of the mitigating circumstances listed in section 413(g),[14] or any others, exist by a preponderance of the

---

(8) At the time of the murder, the defendant was under sentence of death or imprisonment for life;

(9) The defendant committed more than one offense of murder in the first degree arising out of the same incident; or

(10) The defendant committed the murder while committing or attempting to commit a carjacking, armed carjacking, robbery under § 486 or § 487 of this article, arson in the first degree, rape or sexual offense in the first degree."

**13.** All references to section 413 are to this section unless otherwise cited.

**14.** Section 413(g) states:

"(g) *Consideration of mitigating circumstances.*—If the court or jury finds beyond a reasonable doubt, that one or more of these aggravating circumstances exist, it shall then consider whether, based upon a preponderance of the evidence, any of the following mitigating circumstances exist:

evidence. If the court or jury determines that at least one mitigating circumstance exists, then under section 413(h), the court or jury "shall determine whether, by a preponderance of the evidence, the aggravating circumstances outweigh the mitigating circumstances." Section 413(h) states that if the aggravating circumstances outweigh the mitigating circumstances then "the sentence shall be death" and if the aggravating circumstances do not outweigh the mitigators then "a sentence of death may not be imposed." Section 413(i) and (j) state that if the determination is made by a jury then it must be unanimous and the determination shall state: (1) which aggravating circumstances it (the court or jury) finds to exist; (2) which mitigating circumstances it finds to exist; (3) whether the aggravating circumstances outweigh the mitigating circumstances; (4) whether the aggravating circumstances found do not outweigh the mitigating circumstances; and (5) the sentence.

---

(1) The defendant has not previously (i) been found guilty of a crime of violence; (ii) entered a plea of guilty or nolo contendere to a charge of a crime of violence; or (iii) had a judgment of probation on stay of entry of judgment entered on a charge of a crime of violence. As used in this paragraph, 'crime of violence' means abduction, arson in the first degree, escape in the first degree, kidnapping, manslaughter, except involuntary manslaughter, mayhem, murder, robbery under § 486 or § 487 of this article, carjacking or armed carjacking, or rape or sexual offense in the first or second degree, or an attempt to commit any of these offenses, or the use of a handgun in the commission of a felony or another crime of violence.

(2) The victim was a participant in the defendant's conduct or consented to the act which caused the victim's death.

(3) The defendant acted under substantial duress, domination or provocation of another person, but not so substantial as to constitute a complete defense to the prosecution.

(4) The murder was committed while the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental incapacity, mental disorder or emotional disturbance.

(5) The youthful age of the defendant at the time of the crime.

(6) The act of the defendant was not the sole proximate cause of the victim's death.

(7) It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society.

(8) Any other facts which the jury or the court specifically sets forth in writing that it finds as mitigating circumstances in the case."

Section 413(k) covers the imposition of sentence. Section 413(k) states:

"(k) *Imposition of sentence.*—(1) If the jury determines that a sentence of death shall be imposed under the provisions of this section, then the court shall impose a sentence of death.

(2) If the jury, within a reasonable time, is not able to agree as to whether a sentence of death shall be imposed, the court may not impose a sentence of death.

(3) If the sentencing proceeding is conducted before a court without a jury, the court shall determine whether a sentence of death shall be imposed under the provisions of this section.

(4) If the court or jury determines that a sentence of death may not be imposed, and the State did not give the notice required under § 412(b) of this article of intention to seek a sentence of life imprisonment without the possibility of parole, the court shall impose a sentence of life imprisonment.

(5) If the State gives the notice required under § 412(b) of this article of intention to seek a sentence of imprisonment for life without the possibility of parole but does not give notice of intention to seek the death penalty, the court shall conduct a separate sentencing proceeding as soon as practicable after the trial has been completed to determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole.

(6) If the State gives the notice required under § 412(b) of this article of intention to seek the death penalty in addition to the notice of intention to seek a sentence of imprisonment for life without the possibility of parole, and the court or jury determines that a sentence of death may not be imposed under the provisions of this section, that court or jury shall determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole.

(7)(i) In determining whether to impose a sentence of imprisonment for life without the possibility of parole, a jury shall agree unanimously on the imposition of a sentence of imprisonment for life without the possibility of parole.

(ii) If the jury agrees unanimously to impose a sentence of imprisonment for life without the possibility of parole, the court shall impose a sentence of imprisonment for life without the possibility of parole.

(iii) If the jury, within a reasonable time, is not able to agree unanimously on the imposition of a sentence of imprisonment for life without the possibility of parole, the court shall dismiss the jury and impose a sentence of imprisonment for life.

(8) If the State gives the notice required under § 412 of this article of the State's intention to seek a sentence of imprisonment for life without the possibility of parole, the court shall conduct a separate sentencing proceeding as soon as practicable after the trial has been completed to determine whether to impose a sentence of imprisonment for life or imprisonment for life without the possibility of parole."

If a sentence of death is imposed, then this Court is required to conduct a review of the sentence, which can be consolidated with any appeal. Maryland Code (1957, 1996 Repl.Vol.), Article 27 section 414 states, in relevant part, that:

" § 414. **Automatic review of death sentences.**

(a) *Review by Court of Appeals required.*—Whenever the death penalty is imposed, and the judgment becomes final, the Court of Appeals shall review the sentence on the record.

. . .

(d) *Consolidation of appeals.*—Any appeal from the verdict shall be consolidated in the Court of Appeals with the review of sentence.

(e) *Considerations by Court of Appeals.*—In addition to the consideration of any errors properly before the Court on

appeal, the Court of Appeals shall consider the imposition of the death sentence. With regard to the sentence, the Court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or court's finding of a statutory aggravating circumstance under § 413(d); and

(3) Whether the evidence supports the jury's or court's finding that the aggravating circumstances outweigh the mitigating circumstances.

(f) *Decision of Court of Appeals.*—In addition to its review pursuant to any direct appeal, with regard to the death sentence, the Court shall:

(1) Affirm the sentence;

(2) Set aside the sentence and remand the case for the conduct of a new sentencing proceeding under § 413; or

(3) Set aside the sentence and remand for modification of the sentence to imprisonment for life."

### *Apprendi* Questions

Three of the questions submitted by Baker to this Court directly rely on the United States Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Following our decision in *Borchardt v. State,* 367 Md. 91, 786 A.2d 631 (2001), [15] which had not been filed at the time that Baker submitted his briefs or made his oral arguments before this Court, we hold that the questions submitted by Baker that rely on *Apprendi* are without merit.

*Apprendi* was not a death penalty case. It involved a New Jersey separate "hate crime" statute that permitted a trial

---

**15.** *See Borchardt* for the history of the United States Supreme Court's decisions leading up to *Apprendi* and for the application of the *Apprendi* decision by various courts of both the federal government and our sister states.

court to add to or enhance a maximum statutory prison sentence for a specific offense if the trial judge found by a preponderance of the evidence that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J. Stat. Ann. § 2C:44–3(e) (2000). Mr. Apprendi fired several bullets into the home of an African–American family that had recently moved into his previously all-white neighborhood. Mr. Apprendi was arrested the same night and he admitted that he was the shooter. A plea agreement was reached between Mr. Apprendi and the State in which Apprendi pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of the third-degree offense of unlawful possession of an antipersonnel bomb. As part of the plea agreement, the State reserved the right to request that the trial court impose an enhanced sentence on one of the second-degree offenses (count 18) on the ground that the offense was committed to intimidate because of racial bias.

At the plea hearing, the trial court found enough evidence to find Apprendi guilty of the three offenses for which pled. The trial court then held an evidentiary hearing to determine why Apprendi fired the gun at the house in count 18. After hearing evidence from the State and Apprendi, the trial court determined that by a preponderance of the evidence Apprendi had shot into the house for the purpose to intimidate because of racial bias and therefore qualified for an enhanced sentence under the separate hate crime statute. The trial court then sentenced Apprendi to a twelve-year term of imprisonment on count 18 [16] and to shorter concurrent sentences on the other two counts. Apprendi appealed, arguing that "the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was

---

**16.** Count 18 would normally carry a penalty range of five to ten years; however, because the trial court found that the penalty on count 18 was enhanced, Apprendi could have been sentenced for up to 20 years of imprisonment.

based must be proved to a jury beyond a reasonable doubt." *Apprendi,* 530 U.S. at 471, 120 S.Ct. at 2352, 147 L.Ed.2d at 443. The Appellate Division of the Superior Court of New Jersey and the New Jersey Supreme Court denied Apprendi's due process claim and upheld the enhanced sentence imposed under the separate "hate" crime statute by the trial court.

The United States Supreme Court reversed the decision of the New Jersey appellate courts. The Supreme Court noted that the previous year in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court had expressed doubts "concerning the constitutionality of allowing penalty-enhancing findings to be determined by a judge by a preponderance of the evidence." *Apprendi* at 472, 120 S.Ct. at 2353, 147 L.Ed.2d at 444. The Supreme Court then stated that the answer to the question of whether Apprendi was entitled to have a jury find racial bias on the basis of proof beyond a reasonable doubt was foreshadowed when the Court was interpreting a federal statute in *Jones.* The Court stated that:

> "We there noted that 'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' The Fourteenth Amendment commands the same answer in this case involving a state statute."

*Id.* at 476, 120 S.Ct. at 2355, 147 L.Ed.2d at 446, quoting *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311, 326 n. 6 (1999) (citation omitted). The Court stated that it wanted to be clear that it is not impermissible for judges to exercise discretion, when the judges are imposing a sentence that is within the statutory limits. *Id.* at 481, 120 S.Ct. at 2358, 147 L.Ed.2d at 449.

The Court then looked at how a statute that removes the jury from a factual determination that would decide if the defendant could be sentenced to a term of imprisonment

exceeding the statutory maximum is a novelty when compared to historical trial practices. The Court stated:

"We do not suggest that trial practices cannot change in the course of centuries and still remain true to the principles that emerged from the Framers' fears 'that the jury right could be lost not only by gross denial, but by erosion.' *Jones*, 526 U.S. at 247–248, 119 S.Ct. 1215. But practice must at least adhere to the basic principles undergirding the requirements of trying to a jury all facts necessary to constitute a statutory offense, and proving those facts beyond reasonable doubt. As we made clear in *Winship*,[17] the 'reasonable doubt' requirement 'has a vital role in our criminal procedure for cogent reasons.' 397 U.S. at 363, 90 S.Ct. 1068. Prosecution subjects the criminal defendant both to 'the possibility that he may lose his liberty upon conviction and . . . the certainty that he would be stigmatized by the conviction.' *Ibid.* We thus require this, among other, procedural protections in order to 'provide concrete substance for the presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously. *Ibid.* If a defendant faces punishment *beyond that provided by statute* when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached."

*Id.* at 483–484, 120 S.Ct. at 2359, 147 L.Ed.2d at 450–451 (footnote omitted) (emphasis added). The Court then went on to hold that:

"In sum, our reexamination of our cases in this area, and of the history upon which they rely, confirms the opinion that we expressed in *Jones*. Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submit-

17. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

ted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: 'It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' 526 U.S. at 252–253, 119 S.Ct. 1215 (opinion of STEVENS, J.); see also 526 U.S. at 253, 119 S.Ct. 1215 (opinion of SCALIA, J.)."

*Id.* at 490, 120 S.Ct. at 2362–2363, 147 L.Ed.2d at 455 (footnote omitted) (emphasis added).

At the end of its opinion, the Supreme Court addressed whether its holding in *Apprendi* would have an effect on state capital sentencing schemes. The Court stated:

"Finally, this Court has previously considered and rejected the argument that the principles guiding our decision today render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death. *Walton v. Arizona,* 497 U.S. 639, 647–649, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); 497 U.S. at 709–714, 110 S.Ct. 3047 (STEVENS, J., dissenting). For reasons we have explained, the capital cases are not controlling:

'Neither the cased cited, nor any other case, permits a judge to determine the existence of a factor which makes a crime a capital offense. What the cited cases hold is that, once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed.... The person who is charged with actions that expose him to the death penalty has an absolute entitlement to jury trial on all the elements of the charge.'

*Almendarez–Torres,* 523 U.S. at 257, n. 2, 118 S.Ct. 1219 (SCALIA, J., dissenting) (emphasis deleted)."

*Id.* at 496–497, 120 S.Ct. at 2366, 147 L.Ed.2d at 459.

▮▮▮ Baker proffers arguments on the three questions he presented that rely directly on the Supreme Court's holding in *Apprendi.* The first argument Baker makes is that "Maryland's death penalty statute is unconstitutional because it provides that a sentence of death may be imposed if the State proves only that the aggravating circumstances outweigh any mitigating circumstances by a preponderance of the evidence." Baker's second argument is that the rights identified in *Apprendi* should be applied retroactively to his sentence. Baker's third argument is that "as a matter of fundamental fairness, and pursuant to Article 24 of the Maryland Declaration of Rights, this Court should hold that no sentence of death in Maryland is permissible unless the finder of fact unanimously finds beyond a reasonable doubt that the aggravating circumstances outweigh mitigating circumstances." We hold that all three of Baker's arguments are without merit because the Supreme Court's decision in *Apprendi* does not apply to the Maryland capital sentencing scheme.

We have held on numerous occasions that the Maryland death penalty statute is constitutional and more specifically we have held that section 413(h), which requires the aggravating circumstances to outweigh the mitigating circumstances by a preponderance of the evidence, is constitutional. In *Collins v. State,* 318 Md. 269, 296, 568 A.2d 1, 14 (1990), we answered Baker's third argument when we stated:

> "Collins claims the use of the preponderance of the evidence standard in the Maryland death penalty statute is violative of the Eighth Amendment cruel and unusual punishment clause and of the due process clause. Collins apparently refers to the final stage of the capital sentencing special verdict form where the jury is asked to determine, by a preponderance of the evidence, whether the aggrava-

ting circumstances outweigh the mitigating circumstances. Art. 27, § 413(h).

We have previously reconsidered and reaffirmed the rule that a preponderance of the evidence test is proper in weighing aggravating and mitigating factors. *State v. Calhoun,* 306 Md. 692, 739–40, 511 A.2d 461, 485 (1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1339, 94 L.Ed.2d 528 (1987); *Foster v. State,* 304 Md. 439, 477, 499 A.2d 1236, 1255–56 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Tichnell v. State,* 287 Md. 695, 729–734, 415 A.2d 830, 848–50 (1980), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984). Under Maryland's capital sentencing scheme, the sentencing authority may not even consider the appropriateness of a death sentence unless the State has established, beyond a reasonable doubt, that one or more statutory aggravating circumstances exist. Art. 27, § 413(d). Moreover, the state has the burden of showing that aggravating outweigh mitigating circumstances. *Scott v. State,* 310 Md. 277, 284, 529 A.2d 340, 343 (1987) (This Court has consistently held that the state bears the burden of persuasion under Art. 27, § 413(h)); Md. Rule 4–343(e) (Section IV). Under the circumstances of this case, we find no basis for reevaluating the rule set forth in *Calhoun, Foster* and *Tichnell.* Again, we hold the preponderance of the evidence standard is constitutionally proper in the context of Art. 27, § 413(h)."

*See Ware v. State,* 360 Md. 650, 712–713, 759 A.2d 764, 797 (2000), *cert. denied,* 531 U.S. 1115, 121 S.Ct. 864, 148 L.Ed.2d 776 (2001); *Conyers v. State,* 354 Md. 132, 198 199, 729 A.2d 910, 945–946, *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999); *Wiggins v. State,* 324 Md. 551, 582–583, 597 A.2d 1359, 1374 (1991). Therefore, as we stated in *Borchardt,* 367 Md. 91, 121, 786 A.2d 631, 649 (2001), "[t]he only question is whether *Apprendi sub silentio* overturns all of those rulings and requires a different result."

The easiest explanation as to why *Apprendi* would not apply to the Maryland death penalty statute is the straightforward language used by the Supreme Court in *Apprendi*. Judge Wilner, writing for the majority in *Borchardt*,[18] stated:

"Perhaps the easiest answer lies in the unequivocal statement by the *Apprendi* majority that its decision did not render invalid State capital sentencing schemes, such as approved in *Walton*,[19] that allowed the judge, not sitting as the trier of fact, to find and weigh specific aggravating factors. If it is permissible under *Apprendi* for the law to remove that fact-finding and fact-weighing process *entirely* from the jury and leave it to the judge as a legitimate sentencing factor, without specifying a reasonable doubt standard, it can hardly be impermissible for a jury that has found the prerequisite aggravating factors beyond a reasonable doubt to apply a preponderance standard in weighing them against any mitigating circumstances. The *Walton* scheme, in other words, is in far greater direct conflict with the underpinning of *Apprendi* than the Maryland approach. Thus, if the aggravating circumstances do not constitute elements of the offense or serve to increase the maximum punishment for the offense in the *Walton* context, they cannot reasonably be found to have that status under the Maryland law. *If Apprendi renders the Maryland law unconstitutional, then, perforce, it likely renders most of the capital punishment laws in the country unconstitutional.* We cannot conceive that the Supreme Court, especially in light of its contrary statement, intended such a dramatic

**18.** As noted, *supra, Borchardt* had not been filed when the parties in the case *sub judice* submitted their briefs and made their oral arguments before this Court.

**19.** In *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Supreme Court affirmed an Arizona capital punishment law where the sentencing proceeding was held before a judge who determined whether any aggravating or mitigating circumstances existed under the statute. The Supreme Court also held that aggravating circumstances are not elements of an offense, but were to be used to make a determination between the available punishments of death and life imprisonment.

result to flow from a case that did not even involve a capital punishment law."

*Id.* at 121, 786 A.2d at 649 (footnote omitted).

Aside from the straightforward language used by the Supreme Court, the holding in *Apprendi* does not implicate Maryland's death penalty statute. As stated, *supra,* section 412(b) states that "a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole." The statutory maximum penalty upon a conviction of the specific offense of first degree murder is a sentence of death, the sentence of death, thus, is not an enhanced penalty. The holding in *Apprendi* is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455. Upon the State proving, beyond a reasonable doubt, the elements of first degree murder, including any aggravating circumstances that make the defendant eligible for the death penalty, the statutory maximum penalty is death; this maximum statutory sentence of the death penalty cannot logically and possibly be enhanced, whether by a judge or jury. Death simply is not an enhancement of death.

In order for the holding in *Apprendi* to control, there would need to be a penalty enhancement at the sentencing proceeding beyond the maximum sentence provided for by statute. For example, if Baker had been convicted of second degree murder, which allows for a person to be imprisoned for not more than the statutory maximum of thirty years,[20] and at a sentencing proceeding a judge or jury, by reason of a separate statute, was able to make a finding of aggravating factors by a preponderance of the evidence that increased the sentence for second degree murder to any of the sentences available for

---

**20.** Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 section 412(d) states that "[a] person found guilty of murder in the second degree shall be sentenced to imprisonment for not more than 30 years."

first degree murder, then the holding in *Apprendi* might apply. As the Supreme Court stated in *Apprendi:*

> "The New Jersey statutory scheme that Apprendi asks us to invalidate allows a jury to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt that he unlawfully possessed a prohibited weapon; *after a subsequent and separate proceeding,* it then allows a judge to impose punishment identical to that New Jersey provides for crimes of the first degree, N.J. Stat. Ann. § 2C:43–6(a)(1) (West 1999), based upon the judge's finding, by a preponderance of the evidence, that the defendant's 'purpose' for unlawfully possessing the weapon was 'to intimidate' his victim on the basis of a particular characteristic the victim possessed. In light of the constitutional rule explained above, and all of the cases supporting it, this practice cannot stand."

*Apprendi,* 530 U.S. at 491–492, 120 S.Ct. at 2363, 147 L.Ed.2d at 455–456 (emphasis added). The Court went on to state that: "Indeed, the effect of New Jersey's sentencing 'enhancement' here is unquestionably to turn a second-degree offense into a first-degree offense, under the State's own criminal code." *Id.* at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457. The Court also stated that, "[w]hen a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.' " *Id.* at 495, 120 S.Ct. at 2365, 147 L.Ed.2d at 458, quoting *McMillan v. Pennsylvania,* 477 U.S. 79, 88, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67, 77 (1986). Under Maryland's death penalty statute, once a defendant is convicted of a qualifing first degree murder, the maximum penalty is death. This penalty is not enhanced at a sentencing proceeding, the defendant is already eligible for this penalty upon conviction. The holding of *Apprendi* simply does not apply to Maryland's death penalty statute.

As stated, *supra,* the Supreme Court in *Apprendi* specifically rejected the argument that "the principles guiding our decision today render invalid state capital sentencing schemes

requiring judges, after a jury verdict holding a defendant guilty of a capital crime, to find specific aggravating factors before imposing a sentence of death." *Id.* at 496, 120 S.Ct. at 2366, 147 L.Ed.2d at 459. In responding to the principal dissent in *Apprendi*, the majority pointed out the difference between aggravating factors and mitigating factors. The Court stated:

"Finally, the principal dissent ignores the distinction the Court has often recognized between facts in aggravation of punishment and facts in mitigation. If facts found by a jury support a guilty verdict of murder, the judge is authorized by that jury verdict to sentence the defendant to the maximum sentence provided by the murder statute. If the defendant can escape the statutory maximum by showing, for example, that he is a war veteran, then a judge that finds the fact of veteran status is neither exposing the defendant to a deprivation of liberty greater than that authorized by the verdict according to statute, nor is the Judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone. Core concerns animating the jury and burden-of-proof requirements are thus absent from such a scheme."

*Id.* at 491 n. 16, 120 S.Ct. at 2363 n. 16, 147 L.Ed.2d at 455 n. 16 (citations omitted). The jury in this case found beyond a reasonable doubt that Baker was guilty of first degree murder and, upon Baker's specific request that it address the issue of principalship, found that there was an aggravating circumstance that made Baker eligible for the death penalty. Baker was not able to show any mitigating circumstances that outweighed the aggravating circumstances by a preponderance of the evidence; therefore, the Circuit Court was authorized to sentence Baker to death—the maximum penalty provided for by the statute governing first degree murder.

As Judge Wilner examined in *Borchardt*, the courts of our sister states have not found the holding in *Apprendi* to be applicable to their capital sentencing schemes.[21] *See State v.*

---

**21.** Counsel for Baker has submitted an unpublished trial court opinion from the State of Indiana. In *State v. Barker* (In the Marion Supreme

*Hoskins,* 199 Ariz. 127, 14 P.3d 997 (2000), *cert. denied,* —— U.S. ——, 122 S.Ct. 386, 151 L.Ed.2d 294 (2001) (the Arizona Supreme Court followed the United States Supreme Court's holding in *Walton* in denying a claim that the Arizona death penalty law was unconstitutional because it eliminated jury consideration in the sentencing process); *People v. Anderson,* 25 Cal.4th 543, 601, 106 Cal.Rptr.2d 575, 22 P.3d 347, 386 (2001) (the California Supreme Court rejected the argument that the California death penalty statute was unconstitutional because it did not require "(3) findings that aggravation outweighs mitigation beyond a reasonable doubt, or (4) findings that death is the appropriate penalty beyond a reasonable doubt"); *Weeks v. State,* 761 A.2d 804 (Del.2000) (holding that *Apprendi* does not apply to state capital sentencing schemes where judges are required to find certain aggravating circumstances before imposing a death sentence); *Mills v. Moore,* 786 So.2d 532, 536–37 (Fla.2001), *cert. denied,* 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001) (holding that *Apprendi* does not apply to capital sentencing schemes); *State v. Storey,* 40 S.W.3d 898, 915 (Mo.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 272, 151 L.Ed.2d 199 (2001) ("[T]he *Apprendi* Court specifically rejected the contention that its ruling had any effect on the finding of aggravating factors in capital cases."); *State v. Golphin,* 352 N.C. 364, 396–97, 533 S.E.2d 168, 193–94 (2000), *cert. denied,* 532 U.S. 931, 121 S.Ct. 1379–80, 149 L.Ed.2d 305 (2001) (*Apprendi* does not make the North Carolina capital sentencing scheme unconstitutional because the State does not have to notify a defendant prior to trial of the aggravating factors upon which the State intends to rely).[22]

---

Court Criminal Division, Cause No. 49G05–9308–CF–095544), the trial court held that Indiana's capital sentencing scheme was unconstitutional. The case, even if it states the law in Indiana, is distinguishable. The trial court held that Indiana's capital sentencing scheme was unconstitutional because a jury did not have to find an aggravating factor that made a defendant eligible for the death penalty using a beyond a reasonable doubt standard. In Maryland, aggravating "qualifying" factors must be found beyond a reasonable doubt.

22. We note that the United States Supreme Court has denied certiorari of several state court decisions that have held that *Apprendi* does not apply to those states' statutory sentencing schemes.

## The Indictment

█ Baker contends that the "rulings of the United States Supreme Court in *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and *Jones*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311, make clear that the indictment issued by the grand jury in Mr. Baker's case did not give the circuit court jurisdiction to sentence him to death." Specifically, Baker contends that the indictment fails because it did not allege the commission of a capital murder in that the indictment failed to list the aggravating circumstance the State sought to rely on in seeking to impose a sentence of death, and it failed to include any allegation that Baker was a principal in the first degree to murder. We do not agree with Baker that the rulings in *Apprendi* and *Jones* make it clear that the indictment was flawed.

█ Baker's reliance on *Apprendi* fails for two reasons: (1) we have already held that the sentence in the Maryland capital sentencing scheme is not enhanced beyond what the statutory maximum allows so the indictment cannot reference a sentence enhancement as it could have in *Apprendi*,[23] and (2) the Fifth Amendment right to "presentment or indictment of a Grand Jury," in the first instance, has not been held to be applicable to the States through the due process clause of the Fourteenth Amendment. We examined the application of the Fifth Amendment in *Bowers v. State*, 298 Md. 115, 468 A.2d 101 (1983), when we stated:

---

**23.** The majority in *Apprendi* examined the issue of a constitutional claim based on an omission in the indictment. The Court stated:
 "Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the 'due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, and the right to have every element of the offense proved beyond a reasonable doubt. That Amendment has not, however, been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'.... We thus do not address the indictment question seperately today."
 *Apprendi*, 530 U.S. at 477 n. 3, 120 S.Ct. at 2356 n. 3, 147 L.Ed.2d at 447 n. 3 (citations omitted).

"Bowers argues 'that his conviction for murder in the first degree must be reversed because he was denied his common law and constitutional right to be tried on an indictment in a capital case'. He says that the Fifth Amendment to the Constitution of the 'United States expressly provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." ' He argues that this is applicable to the states through the Fourteenth Amendment under *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), pertaining to the double jeopardy clause, and *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), pertaining to the privilege against self-incrimination.

This Court pointed out in *Heath v. State*, 198 Md. 455, 464, 85 A.2d 43 (1951), that there is no constitutional provision expressly guaranteeing a right to trial upon indictment in this State. The Supreme Court in *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), held that the Fourteenth Amendment does not necessarily require a grand jury indictment in prosecution by a state for murder. What Judge Scanlan said for the Court of Special Appeals in *Kable v. State*, 17 Md.App. 16, 299 A.2d 493, *cert. denied*, 268 Md. 750 (1973), is applicable here:

'The appellant, however, would have us anticipate the Supreme Court of the United States. He argues that authority of *Hurtado v. California*, 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232] (1884) has been eroded by more recent Supreme Court decisions. In *Hurtado*, the Court held that the Fourteenth Amendment did not require that State criminal prosecutions be initiated by grand jury indictment. The Supreme Court has consistently adhered to *Hurtado*. The last clear expression of its continuing agreement with the rule of that case came in *Beck v. Washington*, 369 U.S. 541, 545 [, 82 S.Ct. 955, 957 958, 8 L.Ed.2d 98] (1962).

'The appellant, nevertheless, claims that the Supreme Court by its recent decision in *Benton v. Maryland*, 395

U.S. 784 [89 S.Ct. 2056, 23 L.Ed.2d 707] (1969) has given a signal suggesting that the Court ultimately will overturn *Hurtado* and extend the Fifth Amendment grand jury right to the States through application of the Due Process Clause of the Fourteenth Amendment. In *Benton*, the Court held that the double jeopardy prohibition of the Fifth Amendment represented a notion that was "fundamental to the American scheme of justice," and that the prohibition was enforceable against the States through the Fourteenth Amendment. *Id.* at 796 [89 S.Ct. at 2063].

'We eschew speculation on our part as to whether a majority of the present members of the Supreme Court of the United States might hold, despite the precedent of *Hurtado*, that the Fifth Amendment grand jury indictment right is "fundamental to the American scheme of justice" and thus binding on the States through application of the Due Process Clause of the Fourteenth Amendment. We point out, however, that the grand jury was abolished in England in 1933 and that at the present time only half of the States use the grand jury as a regular adjunct of criminal prosecutions. We also observe that, unlike the prohibition against double jeopardy, the requirement of trial by jury and other procedural protections of the Bill of Rights which operate for the protection of a defendant in a criminal case, the grand jury often has been an instrument more for the benefit of the prosecution than of the defendant and, indeed, not infrequently has operated to a defendant's severe detriment.' 17 Md.App. at 26–27, 299 A.2d 493.

. . .

We have no indication from the Supreme Court that *Hurtado* does not continue to be good law. Accordingly, we reject this contention."

*Id.* at 147–49, 468 A.2d at 118–19 (alteration in original) (footnotes omitted). In his brief to this Court, Baker makes a very similar argument. Baker states that he "recognizes that the United States Supreme Court has not held that the grand

jury clause is applicable to the states through the Fourteenth Amendment." Nevertheless, at the end of the same paragraph, Baker states that "it reasonably appears that the Supreme Court may reassess *Hurtado* ... and the incorporation of the Fifth Amendment's grand jury clause to the states." Because we cannot predict when, if ever, the Supreme Court will overturn *Hurtado,* we are not willing to hold that the Fifth Amendment is applicable to the States through the due process clause of the Fourteenth Amendment.

■ Baker also states that Article 21 of the Declaration of Rights in the Maryland Constitution [24] supports Baker's contention that the Circuit Court lacked jurisdiction to sentence him to death. Baker contends that Article 21 requires that the charging document, in this case an indictment, provide adequate notice to the defendant of the charge(s) he faces. As we will discuss, *infra,* we have held that the form of indictment does provide adequate notice.

In an indictment for murder, the General Assembly has provided the State with guidance as to a constitutional form for an indictment. Maryland Code (1957, 1996 Repl.Vol.), Article 27 section 616 states that:

" § 616. **Indictment for murder or manslaughter.**

In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: 'That A.B., on the ... day of ... nineteen hundred and ... , at the county aforesaid, feloniously (wilfully and of deliberately

---

24. Maryland Constitution, Declaration of Rights Article 21 states:
 "**Article 21. Rights of accused; indictment; counsel; confrontation; speedy trial; impartial and unanimous jury.**
 That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State'. "

We have held that this indictment can be used for any of the homicide offenses, *Dishman v. State,* 352 Md. 279, 289–90, 721 A.2d 699, 704 (1998). We have also held that this indictment does not violate Article 21 of the Maryland Declaration of Rights, *Neusbaum v. State,* 156 Md. 149, 157–58, 143 A. 872, 876 (1928), and that this form of indictment is constitutional and provides fair notice to a defendant, *Ross v. State,* 308 Md. 337, 342–46, 519 A.2d 735, 737–39 (1987).

In *Ross,* the defendant was convicted of felony murder and armed robbery. The defendant argued on appeal that he was denied certain rights by the indictment. This Court examined the defendant's arguments and the indictment that was filed in accordance with section 616. We stated:

"Ross argues that he was denied due process of law and the right to be informed of the nature and cause of the accusation against him—rights guaranteed to him by the Sixth and Fourteenth Amendments of the United States Constitution and by the Twenty-first article of the Maryland Declaration of Rights—because the charging document failed to inform him the State was proceeding on a felony murder theory. Moreover, he contends the error is one of commission as well as omission because the indictment specifically charges the premeditated species of murder.

. . .

We conclude that the statute is constitutional as applied in this case. The indictment against Ross, in addition to identifying the victim and the time and place of the offense, fully apprised Ross that he was charged with murder in the first degree. This information satisfies the constitutional requirements of notice. As we have pointed out, murder in the first degree may be proved in more than one way. There is no requirement, however, that a charging document must inform the accused of the specific theory on which the State will rely . . . .

The first recorded challenge to the constitutionality of § 616 came in 1928, in *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928). The short form indictment was used to charge manslaughter, and our predecessors held that an allegation that Neusbaum, on a stated date in the City of Baltimore, 'feloniously ... did kill and slay William Powell' was sufficient without including an allegation of the manner or means by which the death was caused....

. . .

A defendant charged in the statutory language employed in this case is clearly apprised that he is being charged with the crime of murder and that he may be convicted of murder in either degree, or manslaughter. That defendant is also told when and where the homicide occurred, and the identity of the victim. He is not told whether the State will proceed upon one or another, or upon several theories concerning the particular malevolent state of mind alleged to have been present, but neither is he entitled to this information as a matter of constitutional due process....

. . .

This Court has looked with favor upon the general trend of relaxing the formal requirements of indictments to avoid the prolix and often overly technical rules of common law pleading in favor of the shorter and simpler forms. *State v. Chaney,* 304 Md. 21, 497 A.2d 152 (1985), *cert. denied,* [474] U.S. [1067], 106 S.Ct. 824, 88 L.Ed.2d 796 (1986); *Jones, supra; Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985); *State v. Williamson,* 282 Md. 100, 382 A.2d 588 (1978); *Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951); *State v. Wheatley,* 192 Md. 44, 63 A.2d 644 (1949). At the same time we recognize that the basic right of a criminal defendant to fair notice must not be sacrificed on the altar of convenience or simplicity. In this case, where there can be no doubt that the accused was aware he was charged with murder in the first degree, and where it has been the clear and unchanged law of this State for more than 80 years that a charge of murder in this form may be made out by proof of premeditated murder or proof of felony murder,

it cannot be said that Ross was misled, or in any way deprived of his constitutional right to fair notice."

*Ross,* 308 Md. at 342–47, 519 A.2d at 737–740 (footnotes omitted). In the present case, under the capital sentencing scheme, it was clear that Baker was well aware of the fact that the State, under the indictment, was seeking the death penalty and the basis for the State seeking it.

The indictment used by the State was "substantially" to the same effect as section 616. The indictment stated:

"The Jurors of the State of Maryland, for the body of Baltimore County, do on their oath present that WESLEY EUGENE BAKER AND GREGORY LAWRENCE late of Baltimore County aforesaid, on the 6th day of June, in the year of our Lord nineteen hundred and ninety-one at Baltimore County, aforesaid, feloniously, willfully and of deliberately premeditated malice aforethought did kill and murder one Jane Frances Tyson; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

Baker contends that this form of indictment fails because it does not allege the commission of a capital murder in that it fails to list the aggravating circumstances the State sought to rely on in seeking the death penalty, and it fails to include any allegation that Baker was a principal in the first degree to murder. Section 616, and Maryland's capital sentencing statutes, provide for the furnishing of the information that Baker argues should be in the indictment. As stated, *supra,* section 412(b) states that:

"(b) *Penalty for first degree murder.*—Except as provided under subsection (g) of this section, a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole. The sentence shall be imprisonment for life unless: (1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely.…"

Under this section, Baker was notified well before trial that his case was a capital case and he was also notified of the aggravating circumstance upon which the State intended to rely. The information that Baker contends made the indictment invalid was provided to him through the notice required by section 412(b).

We hold that the indictment did not fail and was a valid indictment for a capital case. As stated, *supra*, we have previously held that this form of indictment is constitutional and provides the proper notice to a defendant. Looking at the indictment, our prior holdings, and the requirements of section 412(b), the indictment was not defective. Furthermore, through the indictment and the notice required by section 412(b), Baker was substantially provided with the information that he claims was missing from and, thus, according to Baker, made the indictment defective. Accordingly, this claim has no merit.

### Waiver of Jury Sentencing

Baker contends that he did not knowingly and intelligently waive his right to be sentenced by a jury. Specifically, Baker contends that the trial court failed to mention the standard of proof applicable to the balancing of aggravating and mitigating circumstances and the trial court erred in stating that the jury's finding at trial that Baker was a principal in the first degree was binding at sentencing. Baker also contends that the trial court did not properly advise him that the aggravating circumstances must outweigh the mitigating circumstances beyond a reasonable doubt in compliance with *Apprendi*. We have already held that *Apprendi* is not applicable to our death penalty statutes.

Section 413(b) states that a sentencing proceeding shall be conducted before a jury unless the defendant waives the jury. A defendant's waiver of a jury must be knowingly and voluntarily made. *Trimble v. State*, 321 Md. 248, 261, 582 A.2d 794, 800–01 (1990). When examining whether a defendant made a knowing and voluntary waiver, the court considers the totality of the circumstances.

■ After an examination of the waiver colloquy between the trial court and Baker, quoted at length *supra*, and considering the totality of the circumstances, we hold that Baker made a knowing and voluntary waiver. As we have stated, the trial court did not have to advise Baker of the *Apprendi* standard because we have held that *Apprendi* does not apply. The record reflects that the trial court made a thorough and reasonable effort to explain the sentencing proceeding to Baker and to make sure that his waiver was knowing and voluntary. The trial court asked Baker and his counsel several times if they had been able to adequately discuss the question of whether to be sentenced by the court or a jury. Baker's attorneys were also asked if the court had adequately covered the advisements and they responded that the court had. Baker also stated that he did not have any questions, that he had a sufficient opportunity to discuss the election with his attorneys, and that he did not have any questions that his attorneys were unable to answer. Baker also responded that he was satisfied making his election at that time, that he understood that he could not change his mind, and that he did not need to have further time to discuss the election with his attorneys. While the trial court did state that the trial jury's finding that Baker was a principal in the first degree was binding at the sentencing proceeding, in the totality of the circumstances this error did not affect the fact that Baker's waiver was knowing and voluntary.[25] Moreover, it was at Baker's specific request that the jury was asked to determine whether he was a principal in the first degree. This request was specifically addressed in such a fashion that the jury's determination was to encompass the "qualifying" nature of the question.

Baker relies on the cases of *Trimble v. State*, 321 Md. 248, 582 A.2d 794 (1990), and *Harris v. State*, 295 Md. 329, 455 A.2d 979 (1983), to make the argument that Baker's "waiver of a jury sentencing was corrupted by errors similar to those in

**25.** We also note that at the sentencing hearing, the court made an independent finding that Baker was a principal in the first degree.

*Harris* and *Trimble*." In *Trimble*, the defendant was convicted of first degree murder and sentenced to death. On appeal, Trimble argued that his "death sentence should be vacated because the trial court did not properly advise him of his right to a jury sentencing." Trimble asserted that under Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 27 section 413(k)(2),[26] if a sentencing jury was not able to agree whether to impose a death sentence, then the court may not impose a death sentence. When the trial court was advising Trimble of his rights to be sentenced by a jury prior to the sentencing proceeding, the court stated:

> "And if you do use this jury, and I instruct them, and place them out for deliberation, and if, after reasonable time the jury is not able to agree as to a sentence, I have the authority to dismiss the jury, and impose a sentence for life imprisonment at that point if the jurors are not able to agree as to any sentence."

*Trimble*, 321 Md. at 260, 582 A.2d at 800 (emphasis deleted). Trimble asserted that the judge's instruction that he had the authority to dismiss the jury and impose a sentence of life imprisonment made it unclear that if the jury was unable to agree on a sentence, the judge was required to impose a life sentence. Trimble thought that the judge could also sentence him to death if the jury failed to. This Court agreed with Trimble and vacated his sentence.

We relied on our previous holding in *Harris* to determine that Trimble's waiver was not knowing and voluntary because Trimble may have believed that he should just take his chances with the judge instead of chancing a jury and then chancing a judge if the jury was hung. We found that if Trimble had been properly instructed, he may have taken his chances with the jury in hopes that at least one of the jurors would not vote to sentence him to death. We quoted *Harris*, 295 Md. at 339 340, 455 A.2d at 984, when we stated:

---

**26.** This is the predecessor statute of Maryland Code (1957, 1996 Repl. Vol., 2001 Cum.Supp.), Article 27 section 413(k)(2). The language has not been modified.

"It is one thing to be told that the jury would have to be unanimous before imposing death or life imprisonment, but quite another to not being made aware that if, after a reasonable time, the jury is unable to agree, the court shall dismiss the jury and impose a life sentence. It is not difficult to see how this additional information may very well be significant to one convicted of first degree murder and facing a possible sentence of death."

*Trimble*, 321 Md. at 263, 582 A.2d at 801. The information that was omitted in *Trimble* and *Harris* was specifically provided in the case at bar. Moreover, we do not think that the omission by the trial court, if any, in the case at bar, even if erroneous, rises to the level of the error in *Harris* and *Trimble*.

Baker was advised that a jury had to be unanimous when balancing aggravating and mitigating circumstances and that the jury would weigh, balance, the two factors, but the court failed to further advise Baker that the balancing would be by a preponderance of the evidence standard. In the first instance, it can be reasonably argued that the trial court's instruction that the mitigating circumstances "outweigh the aggravating" circumstances, or "the sentence shall not be death," is the functional equivalent of a preponderance standard. "Out-weighing" begins when a balance is "tipped," however slightly. If the court had failed to advise Baker that the jury must be unanimous when balancing aggravating and mitigating circum-stances, then the problem would be similar to the one encoun-tered in *Harris* and *Trimble*. This Court found that the *Harris* and *Trimble* omissions constituted a failure by those trial courts to communicate a condition or standard that would dramatically increase the chance that a defendant would choose to be sentenced by the court rather than by a jury. The omission in the case *sub judice* simply does not rise to that level. Baker was told that if mitigating factors "out-weighed" aggravating factors, the sentence could not be death.

The dialogue between the court and Baker also makes clear that Baker had plenty of time to discuss the sentencing proceedings with his attorneys and felt that he was ready to

proceed. If *Apprendi* applied to the Maryland death penalty statutes, and the aggravating circumstances had to outweigh the mitigating circumstances beyond a reasonable doubt standard, then the higher threshold of that standard might have made the omission one that would have adversely affected the waiver procedure. As we have held, however, *Apprendi* does not apply to capital sentencing schemes.

### Newly Discovered Evidence

 Baker contends that he has newly discovered evidence that generates a substantial or significant possibility that the jury, or the judge, would not unanimously have determined him to be a principal in the first degree, therefore the new evidence was sufficient to require a new sentencing proceeding. For the purpose of this argument, Baker admits that he was involved in the murder of Mrs. Tyson; however, he contends that the new evidence would go toward resolving whether a person, other than himself, was the principal in the first degree and, consequently, whether the other person, instead of himself, was eligible for the death penalty.

The evidence submitted to the trial court was in the form of two affidavits. One affidavit is signed by Mary Consetta Spicer and it alleges that she saw a man running from the mall parking lot with a purse and that he got into a "dark blue 'Bronco'-type vehicle." As the "Bronco-type vehicle" drove away from the scene, Ms. Spicer saw Scott Faust following the vehicle. The second affidavit is signed by Joseph G. Bathon and it alleges that on October 13, 1978, Mr. Bathon was forced into the trunk of his car by a man with a gun. The man proceeded to drive around for seven and a half hours during which time the man robbed four stores. At one point when the car was stopped, Mr. Bathon tried to get out of the trunk, however, the man opened the trunk and put the barrel of the gun on Mr. Bathon's nose and warned him not to try and escape. The man who kidnapped and assaulted Mr. Bathon was Baker's co-defendant, Gregory Lawrence.[27]

---

27. As indicated, the trial court failed to perceive sufficient relevance to this 1978 occurrence. We also fail to see the relevance of an instance

Maryland Rule 4–331 states the conditions for obtaining a new trial:

**"Rule 4–331. Motions for new trial.**

. . .

(c) **Newly discovered evidence.** The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:

(1) in the District Court, on motion filed within one year after its imposition of sentence if an appeal has not been perfected;

(2) in a circuit court, on motion filed within one year after its imposition of sentence or the date it receives a mandate issued by the Court of Appeals or the Court[ ] of Special Appeals, whichever is later, except that if a sentence of death was imposed, the motion may be filed at any time if the newly discovered evidence, if proven, would show that the defendant is innocent of the capital crime of which the defendant was convicted or of an aggravating circumstance or other condition of eligibility for the death penalty actually found by the court or jury in imposing the death sentence."

We examined the burden of obtaining a new trial on newly discovered evidence in *Jackson v. State,* 358 Md. 612, 751 A.2d 473 (2000). We stated:

"In order to prevail on her motion, petitioner had the burden to demonstrate that (1) the statement from Williams was in fact, newly discovered evidence—evidence that could not have been discovered by due diligence in time to have presented it in connection with her first motion for new trial, and (2) that the newly discovered evidence 'may well have produced a different result, that is, there was a substantial or significant possibility that the verdict of the

---

where the gun was not fired and the victim not killed, to an instance thirteen years later where the gun was fired and the victim killed. Lawrence's criminal history was that he did not shoot his victims. The verdict in this case reflects that Lawrence did not shoot Ms. Tyson.

trier of fact would have been affected.' *Yorke v. State*, 315 Md. 578, 588, 556 A.2d 230, 235 (1989). The first prong is essentially a factual one....

The second prong is a judgmental one-weighing the effect of the evidence."

*Id.* at 626, 751 A.2d at 480; *see Yorke v. State*, 315 Md. 578, 585–588, 556 A.2d 230, 233–35 (1989); *Love v. State*, 95 Md.App. 420, 429–435, 621 A.2d 910, 915–18 (1993). We have held that a trial court's decision to grant or deny a new trial will not be disturbed unless the ruling on the motion was a clear abuse of discretion. *See Argyrou v. State*, 349 Md. 587, 600, 709 A.2d 1194, 1200 (1998); *Yorke*, 315 Md. at 590, 556 A.2d at 235–36; *Mack v. State*, 300 Md. 583, 600, 479 A.2d 1344, 1352 (1984).

In the case *sub judice*, the trial court held a motions hearing on April 2, 2001, at which time the motion for a new sentencing based on newly discovered evidence was heard. At the end of the hearing, the trial court stated:

"One point that I had kind of wondered about and had not checked on when we had the description that Adam, of what he saw, and that was by way of a stipulation; the Defense decided they didn't really want that six year old to testify in front of a jury.

And there was simply the statement that the man who shot his grandmother ran to the left side of the vehicle and until I was looking at the chart Defense counsel had there, I hadn't stopped to kind of think kind of like the President said; depends on what left means.

You know, in the Navy they use port and starboard so everybody knows what we are talking about because left depends on which way you are facing and since these vehicles were in opposite directions, if Adam were meaning left to his left, that would be the passenger's side. If he meant the left as you are sitting in the vehicle, that means the driver's side and I was just curious how that statement had been.

Looking at the affidavit of Miss Spicer—and I certainly, the question was raised in my mind as to whether or not this is newly discovered evidence when the Motion is filed in 2001 after the evidence was discovered in 1996, but assuming that that is not a problem—the question is whether or not that affidavit or that testimony would in any event, in all likelihood, *change the sentencing.*

My findings had been that the State had proved beyond all of that that this passenger was a participant and they had proved beyond a reasonable doubt that he was the principal in the first degree. I don't believe that Miss Spicer's affidavit would change that in any way and, in fact, tends to substantiate Mr. Faust putting Mr. Baker in the passenger's seat. Miss Spicer puts him in the passenger's seat.

Now, granted that Mr. Faust sees something slightly different in how—the approach to—the vehicle, he denies the vehicle being in motion when Mr. Baker got into the passenger's side. Miss Spicer says the vehicle was in motion but when witnesses come in to scenes such as this, we certainly look for the inconsistencies in evidence but if we see everybody with precisely the same story, we begin to have some concerns, too. So no one has identified other than two people being involved here. We haven't identified the third person.

Mr. Faust clearly puts Mr. Baker in the passenger's side. Miss Spicer puts him in the passenger's side and the officer—I don't remember the name of the officer that was in pursuit when the vehicle was stopped and Mr. Lawrence and Mr. Baker jumped out and ran, but they each went their own separate ways—that officer saw Mr. Baker jump from the passenger's side of the vehicle.

So, in my mind, the Spicer affidavit raises no new issues and tends to confirm in my mind that Mr. Baker was the one who shot Mrs. Tyson and that he jumped into the passenger's side of that vehicle and that he had been— was—in the passenger's side when the vehicle was approached by the police.

The affidavit of Mr. Bathon concerning his being carjacked, I, quite frankly, question whether it has any probative value. The first observation I made when I read that was that Mr. Lawrence didn't shoot his victim and I then, in reviewing the State's answer, believed they pointed out that one of the Federal Judges made the same observation. So that's, but as I say, so remote in time and I don't believe it has any probative value one way or the other. And so, in my mind, the so-called newly discovered evidence really, if anything, enhances the State's position. It certainly does not diminish it.

So, having reviewed those affidavits, I am still convinced beyond a reasonable doubt that Mr. Baker was the principal in the first degree and that there is no call for a new sentencing proceeding. So I will deny that Motion for a New Sentencing." [Emphasis added.]

The trial court, for the purpose of its consideration, assumed that the affidavits were newly discovered evidence. The trial court then weighed the effect of the evidence and determined that the evidence would not have produced a different result in the sentencing. That determination was well within the court's proper exercise of discretion. We affirm the judgment of the trial court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

RAKER, J., concurring in result only, joined by BELL, C.J. and ELDRIDGE, J.

I concur only in the judgment of the Court affirming appellant's judgment of conviction and sentence.

As to the due process issue that appellant raises pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the majority affirms appellant's sentence based on this Court's holding in *Borchardt v. State,* 367 Md. 91, 786 A.2d 631 (2001). Appellant's argument is that he was denied due process of law because Maryland Code (1978, 1996 Repl.Vol., 2001 Supp.) Art. 27, § 413(h) provides that a sen-

tence of death may be imposed if the State proves that the aggravating circumstances outweigh the mitigating circumstances by a mere preponderance of the evidence. He argues that, based on *Apprendi*, due process and fundamental fairness require that the determination that aggravating circumstances outweigh mitigating circumstances be made beyond a reasonable doubt.

I adhere to the views expressed in my dissent in *Borchardt* that *Apprendi* and fundamental fairness require that § 413(h) be interpreted to prescribe the reasonable doubt standard for the finding that aggravating factors outweigh mitigating factors.

Nonetheless, I concur in the mandate of the majority opinion affirming appellant's judgment of conviction because the *Apprendi* issue is not properly before the Court in this case. The trial judge, in sentencing appellant, found to exist beyond a reasonable doubt the aggravating circumstance that appellant had committed the murder while committing or attempting to commit robbery, arson, rape in the first degree, or sexual offense in the first degree. The trial judge also found that no mitigating circumstances existed by a preponderance of the evidence, that there was no need to conduct a weighing of the aggravating and mitigating factors, and that imposition of the death penalty was mandatory in appellant's case.

On its face, the weighing provision of § 413(h) applies only when the sentencing judge or a juror finds that one or more mitigating circumstances exist. *See* § 413(h)(1). Furthermore, Maryland Rule 4–343 instructs the sentencing authority that, if it determines that one or more aggravating circumstances has been proven and no mitigating circumstances exist, the sentence shall be death. In addition, the United States Supreme Court has held that it is not unconstitutional for a state to require the death penalty when the sentencer has found one or more aggravating circumstances and no mitigating factors. *See Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Therefore,

§ 413(h) did not apply to appellant, and he cannot challenge its constitutionality in this case.

Accordingly, I join the majority in affirming appellant's judgment of conviction.

Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join in this concurring opinion.